**UNITED STATES of America,**
**Appellee,**

**v.**

**Eric MEDINA–FLORES, Appellant.**
**No. 72–1670.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Feb. 21, 1973.

Decided May 7, 1973.

**226**

Nathan G. Graham, U. S. Atty., Tulsa, Okl. (Ben F. Baker, Asst. U. S. Atty., with him on the brief) for appellee.

Ray H. Wilburn, Tulsa, Okl., for appellant.

Before HILL and DOYLE, Circuit Judges, and BRATTON, District Judge.

BRATTON, District Judge.

The appellant was convicted of knowingly and intentionally importing marijuana into the United States and of knowingly and intentionally possessing it with intent to distribute, in violation of 21 U.S.C.A. §§ 952(a), 841(a)(1).

Medina-Flores was a passenger in a 1961 Carryall bearing Texas license plates as it approached the toll gate on the Will Rogers Turnpike at Miami, Oklahoma, on April 23, 1972. The driver of the vehicle was Ruben Sanchez-Chavez. The other passengers were Mrs. Sanchez, her baby and a Canadian citizen.

A check point operated at the toll gate was being manned at the time by Agent Murphy of the United States Border Patrol. After Sanchez-Chavez had paid the toll, Murphy approached the car, identified himself and asked if the car's occupants were all United States citizens.

Sanchez-Chavez responded in the affirmative and identified two of the passengers as his wife and baby. Because Sanchez-Chavez understood Murphy's question, which was put to him in English, and because Sanchez-Chavez responded in English, the agent was initially satisfied that Sanchez-Chavez was a United States citizen.

Agent Murphy found it necessary to address appellant in Spanish in order to

elicit a response from him. Medina-Flores then handed the agent a crossing card, which allowed him to enter the United States, and another form which would allow him to be in Texas, New Mexico, Arizona and California. The agent then told appellant to get out of the car, and had him stand at the rear of the vehicle.

He next ascertained that the Canadian passenger was legally in this country and then returned to talk again with the driver to see if he could establish whether the driver was guilty of transporting an illegal alien, Medina-Flores. Upon questioning, the driver told the agent that he had picked up Medina-Flores near Dallas.

At this point, two other Border Patrol officers arrived, one of whom was coming to relieve Murphy at the check point. One of them questioned Medina-Flores, who told that officer that Sanchez-Chavez had picked him up at Neuvo Laredo, Mexico.

Agent Murphy, armed with this conflicting information, asked Sanchez-Chavez to step over to the patrol car, where he asked him to furnish some identification. A draft card was produced, listing height, weight and a facial scar that the agent believed did not correspond to the physical characteristics of Sanchez-Chavez.

The agent by now suspected that Sanchez-Chavez might not be an American citizen, and he asked him if he had any other scars or marks. The response was in the negative.

No further scars or marks were shown on the draft card profered, but the agent asked Sanchez-Chavez to let him see his hands and arms. The agent intended, by such inspection, to see if there were any marks or scars on Sanchez-Chavez that would show the draft card was not his. Sanchez-Chavez rolled up the sleeves of his shirt, and the agent saw tattoos, scars and puncture marks. Almost simultaneously, the agent became aware that Sanchez-Chavez had a poor complexion and had been eating candy throughout the questioning, two of the marks, he thought, of an addict.

It was at this moment that the other officers advised Agent Murphy that Mrs. Sanchez was also an illegal alien.

Murphy asked the other officers to look at the arms of Medina-Flores. One of the officers asked him to roll up his sleeves. He complied, and puncture marks on his arms were disclosed.

Agent Murphy asked Sanchez-Chavez when he had last used any narcotics, and Sanchez-Chavez replied that he wasn't using anything except methadone. In response to the agent's interrogation, Sanchez-Chavez said that he had no methadone with him and indicated he didn't know when he would next get any.

The three officers consulted together and decided that reasonable grounds existed to search the vehicle for narcotics. The officers had no search warrant.

A search of the vehicle began, and a hypodermic syringe was found, as well as a burned bottle cap. During the course of the search, one of the officers noticed that the screws holding the carryall's paneling had been tampered with and that the entire inside of the vehicle had been repainted. The officers removed the paneling and discovered packages of marijuana.

Everyone who had been riding in the vehicle was immediately advised of his or her rights and placed under arrest, except for Medina-Flores, who was already under arrest for being an alien illegally in Oklahoma. He, however, was also advised of his rights after the contraband had been found.

The facts above were disclosed at the hearing upon the motion of the defense to suppress the evidence found in the search of the car. The motion was denied, and the evidence was admitted at trial.

On appeal, it is urged that the observation of needle marks upon the arms of Sanchez-Chavez, following the officer's request that he roll up his sleeves, was an illegal search of his person to which

appellant has standing to object. It is further urged that the viewing of appellant's arms was also an illegal search and seizure. Because of these two actions by the officers, the appellant contends, it follows that the search of the carryall was also wrongful, and the marijuana found should have been suppressed.

It cannot be validly argued that the initial detention of the vehicle's passengers for routine investigative purposes was unreasonable. United States v. Granado, 453 F.2d 769 (10th Cir. 1972); United States v. Saldana, 453 F.2d 352 (10th Cir. 1972); 8 U.S.C.A. § 1324(a). The surveillance of traffic on the turnpike was a routine duty of the officer, and his observation in the vehicle of three persons of Mexican descent furnished appropriate circumstances for his first questions to the vehicle's passengers regarding citizenship. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Granada, *supra*; United States v. Saldana, *supra*.

No attempt is here made to justify those events occurring after the initial detention as a border search, undertaken pursuant to 8 U.S.C.A. § 1357(a)(3). The United States concedes that probable cause to believe the vehicle carried narcotics imported contrary to law was required to validate the search of the vehicle. In this connection, it should be noted that the record discloses that the officers were also United States Customs officials and thus not limited to investigate solely for the presence of illegal aliens. United States v. McCormick, 468 F.2d 68 (10th Cir. 1972); United States v. Anderson, 468 F.2d 1280 (10th Cir. 1972); 19 U.S.C.A. § 482.

The threshold question presented is whether appellant has any standing to object to the officer's view of the arms of Sanchez-Chavez. Assuming that what took place amounted to a search of the person of Sanchez-Chavez, appellant has no standing to challenge the legality of such a search. United States v. Humphrey and Mickens, 409 F.2d 1055 (10th Cir. 1969); *see* United States v. Johnson, 454 F.2d 700 (9th Cir. 1972). On the other hand, the appellant is a "person aggrieved" within the meaning of Fed.R.Crim.P. 41(e), and he has standing to object to the warrantless search of the carryall in which was found the marijuana he stands convicted of importing and possessing. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

The record reflects that the search of the vehicle was undertaken after the officers had knowledge that appellant was an illegal alien who stated he had been picked up at Nuevo Laredo, Mexico, and after the driver of the carryall had been discovered to be a narcotics addict who stated he used methadone but had none with him. They were further armed with the knowledge that appellant's statement about where he had joined the group conflicted with the driver's statement that he had picked appellant up near Dallas, Texas.

Such circumstances gave the officers probable cause to believe that a crime was in the course of its commission and justified the ensuing search of the carryall without regard to the discovery of needle marks on appellant's arms. United States v. Humphrey and Mickens, *supra*. It is therefore unnecessary to reach the issue of whether the view taken of appellant's arms constituted an illegal search of his person.

Affirmed.