UNITED STATES of America, Plaintiff-Appellee,

v.

Eduardo RODRIGUEZ, Defendant-Appellant.

No. 74–1668.

United States Court of Appeals, Tenth Circuit.

Argued May 20, 1975.

Decided Sept. 22, 1975.

1314

Ben F. Baker, Asst. U. S. Atty. (Nathan G. Graham, U. S. Atty., on the brief), for plaintiff-appellee.

George Carrasquillo, Tulsa, Okl., for defendant-appellant.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a search and seizure case. In our view the search and seizure violated the Fourth Amendment and the conviction must be reversed. The facts of the case are all important.

Eduardo Rodriguez was a paying passenger on a commercially operated van-type bus carrying twelve ticketed passengers from Laredo, Texas to Chicago, Illinois. The bus was pulling a U-Haul trailer.

On April 13, 1974, the bus, with trailer, arrived at the toll station on the Will Rogers Turnpike near Miami, Oklahoma. One Alfred McCrackin, a border patrol agent, was on duty at the time the bus arrived at the toll station. On the previous day, agent McCrackin had received a telephone call from a person in Texas who advised him, McCrackin, that a bus pulling a U-Haul trailer was en route from Texas to Illinois and that there was approximately 300 pounds of marijuana in the trailer. The informant advised McCrackin that the marijuana would be "in the front of the trailer in boxes or other types of containers covered by a tarpaulin." McCrackin testified that the informant identified himself by name, but that he, McCrackin, had not previously dealt with that particular informant. However, McCrackin did contact other border patrol agents who were acquainted with this informant, and McCrackin apparently satisfied himself that the informant was reliable.

When the bus and U-Haul trailer arrived at the Miami toll station, McCrackin directed the driver of the bus to pull off to the side. The description of the vehicle given McCrackin by the informant matched in all particulars the van-type bus and trailer which arrived at the toll station. McCrackin first made inquiry as to the citizenship of the driver and all of the passengers in the bus. McCrackin determined that all persons were legally in the United States. McCrackin then ordered the driver of the bus to accompany him to the rear of the U-Haul trailer, where he directed the driver to open the trailer door. When the door was opened McCrackin testified that he immediately detected the odor of marijuana. McCrackin stated that upon looking into the opened U-Haul trailer he found it to be "packed with personal belongings, bed rails, mattresses, bicycles, head boards and foot boards and luggage." At McCrackin's direction the driver removed a tarp and beneath this tarp were several gunny sacks which contained marijuana bricks wrapped in newspapers.

At this point McCrackin called for assistance and several additional border patrol agents arrived in a matter of minutes. It was at about this time that the agents determined to search the luggage belonging to various passengers. The passengers were ordered to get out of the bus and come to the rear of the U-Haul truck and identify their luggage. All of the passengers were then directed to open their luggage for inspection. Specifically, Rodriguez was asked to identify his luggage, which he did. Rodriguez was then told to open his suitcase, which he did by use of a key. A search of his suitcase revealed the presence of a quantity of heroin which formed the basis for the present prosecution of Rodriguez for unlawful possession of 25 pounds of heroin with an intent to distribute in violation of 21 U.S.C. § 841. The search of the luggage of the other passengers apparently revealed no other contraband of any type. However, as we understand it, the driver of the bus was charged with unlawful possession of the marijuana found in the U-Haul trailer.

Prior to trial Rodriguez filed a motion to suppress based on the premise that the search of his suitcase was in violation of the United States Constitution. This motion, after hearing, was denied. Upon trial Rodriguez renewed his objection to the introduction into evidence of the heroin seized from his suitcase. This objection was also overruled. The jury convicted Rodriguez and he now appeals.

The precise issue on appeal is whether the border patrol agents had probable cause to believe that there was a controlled substance in Rodriguez' suitcase. There is some suggestion that Rodriguez "voluntarily" opened his suitcase and that in such circumstance there is no necessity to consider the question of probable cause. We do not agree with this suggestion. The border patrol agents were in full uniform and each carried loaded side arms. The agents ordered the passengers in the bus to come to the rear of the trailer and iden-

tify their luggage. The passengers were then "told" to open their suitcases for an inspection. The fact that Rodriguez, who understood little English, complied with these various commands from persons in apparent authority does not in our view mean that he "voluntarily" consented to the search of his suitcase. When consent is relied on to justify the lawfulness of a search, the Government has the burden of showing that consent was, in fact, freely and voluntarily given, and this burden is not met by merely showing acquiescence to a claim of lawful authority. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), and *United States v. Jones*, 475 F.2d 723 (5th Cir. 1973).

■ In our resolution of the matter we shall assume that agent McCrackin did have probable cause to believe that there was marijuana in the U-Haul trailer under a tarpaulin. Although McCrackin did not himself have prior dealings with the informant, he inquired of others who did, and thereby satisfied himself that the informant was reliable. This is true notwithstanding the fact that the agent in charge of this particular border patrol station had on a prior occasion indicated that in his opinion the informant was only "semi-reliable." Reliability does not mean infallibility. So, all things considered, McCrackin did have probable cause to believe that there was marijuana under a tarp in the U-Haul trailer.

■ There is the further suggestion that even if there was probable cause, McCrackin should nonetheless have obtained a search warrant before making any search of the trailer. In this connection it is significant that McCrackin knew from the informant only that the bus might pass through Miami, Oklahoma, on its way to Illinois. In this context, the highly mobile nature of the van and its contents created exigent circumstances which in our view did not require that McCrackin obtain a search warrant before searching the trailer for marijuana. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); and *United States v. Bozada*, 473 F.2d 389 (8th Cir. 1973), *cert. denied*, 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973).

The critical issue, as we see it, is whether, after locating the marijuana in the precise place in the trailer where the informant had said it would be, i. e., under a tarpaulin, the agents then had probable cause to believe that the various suitcases belonging to the twelve passengers in the bus also contained marijuana, or some other controlled substance. Our study of the record convinces us that there was no such probable cause.

■ In the first place, there was nothing in the informant's communication to agent McCrackin to indicate that any marijuana was being carried in the suitcases belonging to any of the passengers in the bus. Furthermore, there is nothing in the record to in anywise connect Rodriguez, or any other passenger for that matter, with the marijuana found in the trailer. Rodriguez was not charged with possession of marijuana with an intention to distribute. It was the driver of the bus who was charged. So, the question boils down to whether the finding of marijuana in gunny sacks covered by a tarpaulin in the trailer is itself sufficient to show probable cause to search the passengers' luggage. We think it does not.

The fact that marijuana was discovered in the trailer was not sufficient to justify the arrest of Rodriguez for possession of marijuana and he was not, in fact, arrested for such offense. The marijuana was considered by the agents to be in the possession of the bus driver. Under these circumstances, if the agent did not have probable cause to arrest Rodriguez, there certainly would be no probable cause to search, for example, Rodriguez' person. And even if Rodriguez was somehow subject to a lawful arrest, the scope of any permissible search incident to such arrest would not

have extended to his suitcase in the trailer. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). If, for example, Rodriguez' suitcase had merely been under his seat in the bus, instead of in the trailer, it could not be said that there was probable cause to search Rodriguez' suitcase. *United States v. Day*, 455 F.2d 454 (3d Cir. 1972); and *United States v. Collins*, 142 U.S.App.D.C. 100, 439 F.2d 610 (1971). And the mere fact that Rodriguez' suitcase, along with other luggage of the passengers, was in the trailer in near proximity to the gunny sacks of marijuana is in our view insufficient to establish probable cause to believe that there was also marijuana in the passengers' luggage. One does not follow the other. Absent probable cause, then, the border patrol agents had no authority to search Rodriguez' suitcase.

In reaching the conclusion that the border patrol agents did not have probable cause to believe that Rodriguez' suitcase contained a controlled substance, we rely upon *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), which we deem to have particular applicability. In that case Reed, an informant, advised the authorities that he had made arrangements to buy counterfeit gasoline ration coupons from one Buttitta. Thus forewarned, the police descended upon Buttitta's automobile as the sale was being consummated. Reed was in the back seat of the vehicle with two gasoline ration coupons in his hand which he said he had just obtained from Buttitta, who was sitting in the driver's seat. The coupons were later determined to be counterfeit. Di Re was a passenger in the vehicle and was seated beside Buttitta in the front seat. All three were taken to the police station and searched. The search of Di Re disclosed one hundred counterfeit gasoline ration coupons which were in an envelope concealed between his shirt and underwear. Based on the sequence of events Di Re was convicted of knowingly possessing the counterfeit gasoline ration

coupons found on his person. On appeal his conviction was reversed on the grounds that the search of Di Re's person was unlawful. *United States v. Di Re*, 159 F.2d 818 (2d Cir. 1947). On certiorari the Supreme Court affirmed. In affirming, the Supreme Court held that the right to search the vehicle for contraband did not carry with it the right to search Di Re's person, even though he was an occupant of the car. In thus holding, the Court commented as follows:

> " * * * We are not convinced that a person, by mere presence in a suspected car loses immunities from search of his person to which he would otherwise be entitled." 332 U.S. at 587, 68 S.Ct. at 225.

In *Di Re*, the Court also held that there was not probable cause to arrest Di Re, and that inasmuch as the arrest was unlawful, the ensuing search could not be upheld on the grounds that the search was incident to arrest.

Rodriguez was not subject to arrest upon the discovery of the marijuana in the trailer, and, in line with the reasoning of *Di Re*, it follows that there could not be a lawful search of his person. The same immunity from search would, in our view, apply to Rodriguez' suitcase, as well as his person.

In arguing that the search was a lawful one the Government relies heavily upon *United States v. Medina-Flores*, 477 F.2d 225 (10th Cir. 1973). We fail to see the similarity between that case and the instant one beyond the fact that both searches occurred at the toll station on the Will Rogers Turnpike near Miami, Oklahoma. In *Medina-Flores* the circumstances were such that there was probable cause to believe that the driver and the other occupants of the car were, in a sense, jointly involved in unlawful activities. In the instant case Rodriguez was a paying passenger in a commercial vehicle transporting passengers from Texas to Illinois. So far as the record is concerned, the driver of the bus and Rodriguez were total strangers.

We are of course aware that heroin, and a great amount thereof, was found in Rodriguez' suitcase. Such fact, however, does not validate a search that was invalid in its inception. In this connection the following comment by Justice Jackson in *Di Re* is particularly appropriate:

"The Government's last resort in support of the arrest is to reason from the fruits of the search to the conclusion that the officer's knowledge at the time gave them grounds for it. We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success.

## V.

"We meet in this case, as in many, the appeal to necessity. It is said that if such arrests and searches cannot be made, law enforcement will be more difficult and uncertain. But the forefathers, after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment. Taking the law as it has been given to us, this arrest and search were beyond the lawful authority of those who executed them. The conviction based on evidence so obtained cannot stand." 332 U.S. at 595, 68 S.Ct. at 228 (footnote omitted).

Judgment reversed and cause remanded with directions to vacate the judgment of conviction and dismiss the charge.