**UNITED STATES**

v.

**Airman Phillip D. POPE, FR 495–68–8730 26th Field Maintenance Squadron United States Air Forces in Europe.**

**ACM 22192.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 17 December 1976.

Decided 19 July 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain Kenneth R. Powers, USAFR. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Lieutenant Colonel Michel Levant, USAFR.

Before EARLY, Senior Judge and FORAY and ORSER, Appellate Military Judges.

DECISION

EARLY, Senior Judge:

Tried by general court-martial, the accused was convicted, despite his pleas, of possessing lysergic acid diethylamide and heroin, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The approved sentence extends to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $100.00 per month for six months and reduction to the grade of E–1.

Appellate defense counsel assign one error:

PROSECUTION EXHIBITS 1, 2, 4 AND 5 WERE THE PRODUCTS OF AN UNLAWFUL SEARCH OF THE ACCUSED.

We agree.

On the day in question, Special Agent Coons, an undercover agent of the Army Criminal Investigations Division (CID), was stationed in the bahnhof (train station) at Bad Cannstadt, Germany. Coons' mission was to locate and attempt to infiltrate groups coming to a Rolling Stones concert in an effort to find drug users and sellers. When he found service members with drugs, he would, by prearranged signal, notify other CID agents who would apprehend them. According to Coons' testimony, the accused and five or six other white males came down the bahnhof stairway carrying backpacks and sleeping bags. One member of the group, Barfield, approached Coons and asked if he knew where the concert was being held. Coons responded that he did, and Barfield asked if Coons would give them a ride. Coons told Barfield that it would cost 20 marks for a trip to the site of the concert. During this interchange, three

members of the group went to a wurst stand to eat, leaving Barfield, the accused and one Katz near Coons. Coons testified that Barfield, the accused and Katz talked "a little bit among themselves", and Barfield then said, "Do you smoke?" Coons gave a "noncommittal" answer with his hands, in response to which Barfield offered to give Coons a "bowl" in lieu of the 20 marks. Coons, because of his past experience, understood that a "bowl" meant marijuana or hashish. Coons agreed to take a "bowl" but told Barfield that he wanted an additional "bowl" from the other group since he would have to make two trips to carry them all out to the stadium. He also told Barfield that he wanted to see "the stuff" before he left because he did not want to be "ripped off." Barfield went over to the other group and talked to a man subsequently identified as Kramer. He then came back and briefly conferred again with Katz and the accused. Barfield then told Coons that Kramer would give him a bowl from "the stuff" he had in his knapsack.

The accused, Katz and Barfield accompanied Coons to his car. Barfield sat in the front seat, Katz on the driver's side in the rear, and the accused sat behind Barfield. Once inside the car, Barfield took out a film cannister and began to fill a pipe with a substance Coons believed to be hashish. The accused said, "Let's go." One of the passengers commented that "we would share the bowl all the way or words to that effect." At this point Coons, in attempting to start the car, inadvertently hit the turn signal and turned on the car lights, which was a signal to the other CID agents that drugs were present. The CID agents opened the doors and apprehended the passengers. Coons testified that it was his intention to try to buy drugs from Katz and the accused, but his unfamiliarity with the operation of the car caused his precipitate signal to the other agents.

A subsequent search of the accused discovered the drugs which make up the specifications here.

Defense witnesses contradicted Coons' version of the events. Katz testified that Coons approached him and offered a ride to the stadium in exchange for a "bowl." Katz said he refused but found two other people to give Coons the hashish. He stated that the six airmen in the group were not together until they got off the train, even though they all came from the same air base. Katz' recollection was not perfect since he had a "buzz" from drinking wine and Jaegermeister.

Barfield testified that he came down to the concert with Kramer, and that the accused and Katz were in a different rail car. He stated that Katz told him that Coons would give them a ride if someone would "fill his bowl." Barfield agreed to provide the "filling." He denied consulting with the other people about providing the "bowl". He also testified that the pipe belonged to Coons. Kramer had participated in the consumption of three bottles of wine with three others that night.

With the testimony in this posture, the military judge admitted the drugs and paraphernalia seized from the accused.

 Here, the search of the accused, since it was not previously authorized, must stand for its legality on a valid apprehension.[1] *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Authority to apprehend arises only if the person effecting the apprehension has a reasonable belief that an offense has been committed and that the person apprehended committed it. Article 7, Code, *supra*; *Henry v. United States, supra*; *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). An apprehension without probable cause cannot be validated by evidence obtained in a subsequent search. *United States v. Garcia*, 415 F.2d 1141 (9th Cir. 1969); *United States v. Henry, supra*. Unless the CID agents had probable cause to believe that the accused had committed an

---

1. Throughout we have used the military term "apprehend" though, of course, the civilian cases speak in terms of "arrest." For our purposes here the words are considered synonymous.

offense, they did not have probable cause to apprehend and search him.

■■■ It is well settled that mere presence at the scene of a crime does not give probable cause for apprehension. *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *Arellanes v. United States*, 302 F.2d 603 (9th Cir. 1962); *United States v. Bazinet*, 462 F.2d 982 (8th Cir. 1972); *United States v. Rodriguez*, 525 F.2d 1313 (10th Cir. 1975); *United States v. Branch*, 545 F.2d 177 (D.C.Cir. 1976). Guilt may not be established by mere association. *Diaz-Rosendo v. United States*, 364 F.2d 941 (9th Cir. 1966); *United States v. Mehalek*, 42 C.M.R. 744 (A.C.M.R. 1970); *United States v. Myers*, 20 U.S.C.M.A. 269, 43 C.M.R. 109 (1971). The person being apprehended must be a participant in the crime, not merely "a knowing spectator." *United States v. Garguilo*, 310 F.2d 249 (2d Cir. 1962).

As the Supreme Court held in *United States v. Di Re, supra* :

> The argument that one who "accompanies a criminal to a crime rendezvous" cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passers-by, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. . . . Presumptions of guilt are not lightly to be indulged from mere meetings.

332 U.S. at 593, 68 S.Ct. at 228.

Where the warrantless arrest of a person other than the criminal actor has been sustained, the courts have always found something more than mere casual presence. In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), officers, having probable cause to arrest Ker, went to his apartment for that purpose. Upon entering the apartment, they were met by Ker and saw his wife, Diane, emerge from the kitchen, where in plain view, were illicit drugs. The Court held:

> Probable cause for the arrest of petitioner Diane Ker, while not present at the time the officers entered the apartment to arrest her husband, was nevertheless present at the time of her arrest. . . . Even assuming that her presence in a small room with the contraband in a prominent position on the kitchen sink would not alone establish a reasonable ground for the officers' belief that she was in joint possession with her husband, that fact was accompanied by the officers' information that Ker had been using his apartment as a base of operations for his narcotics activities. Therefore, we cannot say that at the time of her arrest there were not sufficient grounds for a reasonable belief that Diane Ker, as well as her husband, was committing the offense of possession of marijuana in the presence of the officers.

374 U.S. at 36–37, 83 S.Ct. at 1631.

In *Harding v. United States*, 182 F.2d 524 (4th Cir. 1950), the court found presence near a still and *flight* from officers sufficient to justify arrest and conviction of operating the still. See also *Kuhl v. United States*, 322 F.2d 582 (9th Cir. 1963).

Presence in a room or automobile where marijuana smoke was detected has been held sufficient grounds to justify an arrest. See *People v. Vigil*, 175 Colo. 421, 489 P.2d 593 (1971); *People v. Olson*, 175 Colo. 140, 485 P.2d 891 (1971). Being present in a room where a known marijuana trafficker was rolling marijuana cigarettes established probable cause for arrest. *Gonzales v. People*, 156 Colo. 252, 398 P.2d 236 (1965); see also *State v. Waltz*, 61 N.J. 83, 293 A.2d 167 (1972).

■■■ But more than mere suspicion is needed for arrest and search. In *United States v. Branch*, 545 F.2d 177 (D.C.Cir. 1976), officers obtained a warrant to search Branch's apartment. An informer had told the officers that a shipment of drugs was coming. One Garrison arrived at the door of the apartment, and a search revealed drugs in his shoulder bag. The court held:

> While this court has repeatedly announced its deference to the informed

opinions and conclusions of trained and experienced law enforcement officials, unarticulated hunches have not been found sufficient to support a finding of probable cause. 545 F.2d at 186.

Similarly in *United States v. Rodriguez,* 525 F.2d 1313 (10th Cir. 1975), an informer told border patrolmen that marijuana would be found in the trailer of a small bus. Agents stopped the bus and found the marijuana. Subsequently the passengers were ordered to open their luggage. Heroin was found in Rodriguez' suitcase. The court found that there was no probable cause to arrest and search the passengers even though there was probable cause to search the bus and the driver.

Military cases have taken the same approach. In *United States v. Myers,* 20 U.S. C.M.A. 269, 43 C.M.R. 109 (1971), a routine patrol saw several people in a wooded area by a river bank. In searching the immediate area they found six hand-rolled marijuana cigarettes. The entire group was apprehended for possession of dangerous drugs. The Court found that there was no probable cause for arrest. "Neither suspicion nor intuition provide probable cause to effect an arrest." 43 C.M.R. at 111. In *United States v. Mehalek,* 42 C.M.R. 744 (A.C.M.R. 1970) the accused was a passenger in a car driven by a person suspected of possessing a weapon and drugs. Marijuana was found on his person after apprehension and search. The Court found no probable cause saying:

> For all we know, the appellant may have been a passenger in the automobile as a consequence of hitch-hiking a ride back to the post. Moreover, a person by "mere presence in a suspected car" does not lose immunities from search of his person to which he would otherwise be entitled.
>
> · · ·

42 C.M.R. 746.

▮ Here, to establish probable cause for the accused's apprehension, the Government was required to show his participation in the transfer of hashish. Viewing the evidence in a light most favorable to the Government, the following factors were shown:

1. The accused was part of an amorphous group in a train station;

2. One member of the group agreed to provide hashish in return for a ride to the site of the rock concert;

3. The accused entered the car with the person providing the hashish and a third party;

4. That person conferred (or at least talked) with the accused and the third party on two occasions prior to agreeing to provide the hashish;

5. The accused was present when the hashish was transferred.

There is no evidence that the accused participated in the transfer; indeed the accused appears to have been silent during this period. It may well be that he, like Katz, refused to transfer any drugs to Coons, and that he merely went "along for the ride." The fact that Barfield "conferred" twice with the accused and Katz, without more, does not make those two principals in the criminal act. The sum of the "conferences" might be no more than explanation of the arrangements; certainly the likelihood of discussions of a crime is no greater than of some more innocent subject. Presence, even knowing presence, does not constitute the accused an aider and abetter. *United States v. Garguilo, supra*; see also *United States v. Baker,* 499 F.2d 845 (7th Cir. 1974); *United States v. Stromberg,* 268 F.2d 256 (2d Cir. 1959), cert. denied, 361 U.S. 863, 80 S.Ct. 123, 4 L.Ed.2d 102 (1959). Under the peculiar circumstances of this case, we cannot find sufficient evidence to establish the necessary reasonable grounds in the arresting officers' minds to sustain the apprehension.[2] Even the accused's

---

**2.** See *Bell v. United States,* 102 U.S.App.D.C. 383, 254 F.2d 82 (1958) where the court defines *probable cause in terms of the "reasonable, cautious and prudent peace officer under the circumstances of the moment."* 254 F.2d at 86. Here we find it difficult to believe that Coons felt he had sufficient grounds for arrest in view of his avowed intention to enter into negotiations with the accused and Katz for the purchase of drugs with marked money and his admission that he unintentionally gave the signal for the "bust."

presence in a car where drugs were found—a fact that might otherwise be significant—is not sufficient here since the car belonged to the Government agents and not the accused or his associates. Cf. *United States v. Oswald,* 441 F.2d 44 (9th Cir. 1971); *State v. Waltz, supra.*

Possibly Coons might have been able to link the accused to possession of drugs but for his precipitate inadvertence in signaling his cohorts, but possibility does not equate probability: it is simply not enough. Since there were not reasonable grounds for the accused's apprehension, the search was not legal and the evidence seized not admissible against him.

The findings of guilty are incorrect in law and fact and are set aside. The charges are dismissed.

FORAY and ORSER, Judges, concur.