UNITED STATES

v.

Senior Airman Kerry R. SHEPHERD, FR 227–19–0352 United States Air Force.

ACM 25682.

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 Sept. 1986.

Decided 7 April 1987.

⟨⇒1056

Approved sentence: Bad conduct discharge, confinement for fifteen (15) months, forfeiture of four hundred twenty-six dollars ($426.00) per month for fifteen (15) months and reduction to airman basic.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Charles L. Wille.

Appellate Counsel for the United States: Colonel Joe R. Lamport and Lieutenant Colonel Robert E. Giovagnoni.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

LEWIS, Judge:

The appellant was found guilty pursuant to his pleas of being drunk on duty as a fireman, two specifications alleging the wrongful use of marijuana and one specification alleging the wrongful use of cocaine. The evidence in support of the wrongful use specifications was obtained through two separate urinalyses. The appellant's pleas of guilty to these specifications were conditional and preserved for appellate review his motion to suppress the urinalysis test results. The appellant's approved sentence is a bad conduct discharge, confinement for 15 months, forfeiture of $426.00 per month for 15 months and reduction to airman basic.

The appellant, who was on duty as a fire alarm operator, was found asleep at his post in the alarm room by a civilian co-worker in the early morning hours of 10 May 1986. The latter attempted to awaken the appellant by shaking him. While doing so, he noted a faint odor of alcohol. He was not successful in arousing the appellant. Shortly thereafter the senior non-commissioned officer on duty in the fire station was summoned. He was also unsuccessful in his attempt to awaken the appellant. The appellant's commander, the Base Civil Engineer, was contacted by telephone and briefed on the situation. He was specifically advised that extraordinary efforts to arouse the appellant had been used to no avail.

The commander testified during the suppression hearing that, in view of the scene which had been described to him, he "was convinced that there was some other elements [other than alcohol] involved, such as drugs." He relayed the information he had received along with his thoughts by telephone to the Base Commander. The Base Commander authorized a seizure of blood and urine samples for alcohol and drug testing, respectively. Testing of the appellant's blood reflected a sufficiently high alcohol content to sustain the charge

of drunk on duty. His urine reflected the presence of the specific metabolites for marijuana and cocaine. This evidence formed the basis for the specification alleging wrongful use of cocaine and one of the two specifications alleging wrongful use of marijuana.

On 11 June 1986, a "unit sweep," or urinalysis inspection, of all persons holding the Air Force Speciality Code (AFSC) of firefighter at Shaw Air Force Base was accomplished. The appellant's commander testified that a roster of those to be included in the sweep had been prepared on 9 June 1986. The roster included the names of all military firefighters who were not away from the base on leave. The appellant, although he was at that time performing dormitory duties pending resolution of the 10 May 1986 incident, was directed to participate. He still held the firefighter AFSC, and, as his commander explained, he might be returned to firefighting duties at some future date. The appellant's commander denied that he specifically intended that the appellant be a target of the sweep. He acknowledged, however, that his suspicions of the appellant's possible drug use in conjunction with the 10 May incident may have been a factor prompting his directing the inspection of the firefighters. In response to questioning by the military judge, the commander testified as follows:

I am possibly more concerned about things that would affect the morale and welfare of my folks than perhaps some other commanders. I've had occasion before to—to look into certain areas with a sweep. I expect very high duty standards of the people and expect them to be free and clear of any kind of drugs, medication or anything, that would impair their duty performance. There was no particular targeting or—or concern by name. I—I know I signed the 5–7–1 [firefighter AFSC prefix] roster that was subsequently generated. I don't recall looking at it at all for any particular names, other than what was on it.

The day following the sweep, 12 June 1986, the commander received notice by electronic message that the appellant's urine which was seized on 10 May 1986 had yielded positive test results for marijuana and cocaine. Although the timing of this notice might raise certain suspicions, there is absolutely no suggestion in the record that this information was known to the commander prior to 12 June 1986. The appellant's urine which was received on 11 June 1986 was subsequently tested. It yielded a positive test result for marijuana.

The appellant's motion to suppress addressed the 10 May 1986 seizure and the 11 June 1986 unit inspection separately. Based on our review we have concluded that the military judge erred in not suppressing the test results as to the urine seized on the former occasion, but not as to the urine received through the unit sweep on the latter occasion.

*The 10 May 1986 Seizure of Urine.*

The military judge, in denying the motion to suppress the results of testing of the appellant's urine seized on 10 May 1986, stated the following rationale for his ruling:

The fact that the accused may have been intoxicated from alcohol did not preclude the *possibility* of his also being intoxicated from illicit drugs. In this age of increasing availability and use of illicit drugs, the base commander was well within the limits of his discretion in directing seizure of the accused's urine. (Emphasis added)

■ We do not quarrel with the military judge's observation that evidence of alcohol ingestion does not preclude the "possibility" of drug ingestion as well. However, this point begs the question. Whether evidence of alcohol use is present or not, the record should reveal some articulable indicia whereby a trained observer might surmise that an individual has recently used a controlled substance. *United States v. Pechefsky,* 13 M.J. 814 (A.F.C.M.R.1982), *pet. denied,* 14 M.J. 293 (1982); *United States v. Bray,* 12 M.J. 553 (A.F.C.M.R.1981); *United States v. Thomas,* 10 M.J. 687 (A.F.C.M.R.1981). As these cases demonstrate, a seizure of evidence for use in a court-mar-

tial must be premised on a probable cause determination, subject to exceptions not relevant here. Mil.R.Evid. 311(g). We have held that more than mere suspicion is required to establish probable cause. *United States v. Pope*, 3 M.J. 1037, 1040 (A.F. C.M.R.1977), *reconsideration denied*, 3 M.J. 1056 (A.F.C.M.R.1977). Possibility does not equate to probability. *Id.* at 1042.

■ The military judge correctly observed that drugs are increasingly available in society. Alert commanders do well to react to suspicions that drug ingestion may be linked to unusual behavior. The Base Commander was certainly acting within his authority in directing a seizure of the appellant's urine. We do not for a minute question that it was appropriate that he do so. However, we cannot avoid the conclusion that, in so doing, he was acting on "a reasonable suspicion," rather than a probability, of drug ingestion. Air Force Regulation 30–2, Social Actions Program, para. 5–8 (18 April 1986). We further conclude that his order for seizure of the appellant's urine was a command-directed examination. The testing results were inadmissible at trial. *Id.*, para. 5–8b. Having examined the totality of the circumstances reflected in the record, we are not satisfied that the information available to the commander was sufficient to constitute probable cause for believing that the appellant had used a controlled substance. *See United States v. Johnson*, 23 M.J. 209, 212 (C.M.A.1987), citing *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). We are by no means indicating that clear evidence of alcohol intoxication will invariably preclude a commander's finding probable cause for a seizure of urine for drug urinalysis. Our holding is based on our conclusion that the record before us contains insufficient evidence to sustain a probable cause determination in this case.

■ We find that the results of the testing of appellant's urine which was seized on 10 May 1986 were erroneously admitted.

The positive test results were the only substantive evidence supporting the appellant's wrongful use of cocaine and one of the two alleged wrongful uses of marijuana. While the appellant admitted to the uses of these substances during the providence inquiry and through a stipulation of fact, he did not thereby waive the suppression issue in view of his conditional pleas. R.C.M. 910(a)(2). The findings of guilty of Specifications 1 and 2 of Charge II are set aside. Normally, when such action is taken at the appellate level the affected charges and specifications may be returned for a rehearing with the appellant's having the option of withdrawing his prior pleas of guilty. *Id.* In this case it does not appear that the prosecution has sufficient independent evidence to further pursue the affected specifications. Accordingly, Specifications 1 and 2 of Charge II are dismissed.

*The 11 June 1986 Unit Sweep.*

The military judge correctly characterized the unit sweep of 11 June 1986 as an inspection within the meaning of Mil.R. Evid. 313. Evidence from such an inspection is admissible in a court-martial. Mil.R. Evid. 313(a). "An 'inspection' is an examination of the whole or part of a unit ... conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit...." Mil.R.Evid. 313(b). However, the rule cautions: "An examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inspection within the meaning of this rule." *Id.*

■ The commander may well have been prompted, in part, to order the inspection by his recollection of the 10 May 1986 incident involving the appellant. However, the available evidence does not support the conclusion that the 11 June 1986 sweep "was not a valid health-and-welfare inspection at all, but rather was a disguised general search...." *United States v. Brown*, 12 M.J. 420, 422 (C.M.A.1982). *Compare*

*United States v. Austin,* 21 M.J. 592 (A.C. M.R.1985), in which the Army Court found that a particular unit sweep was not a Mil.R.Evid. 313 inspection. In *Austin,* the commander had received information that some of his unit's noncommissioned officers were abusing drugs. The military judge in that case specifically found that the commander's "primary purpose" in ordering the sweep was to identify drug abusers and to institute disciplinary action against them. Id., at 594. There is no such finding in this case, nor is there evidence to sustain such a finding.

■ Nothing in the record would support a conclusion that the appellant's inclusion within the group subjected to the inspection was a contrivance. *See generally, United States v. Brown, supra; United States v. Middleton,* 10 M.J. 123 (C.M.A. 1981), as to permissible scopes of health-and-welfare inspections. As did the military judge in comments from the bench, we reject the contention that the commander had an obligation to exclude the appellant from the inspection based on his suspicious activity of a month earlier. We do not believe that the drafters of Mil.R.Evid. 313(b), or the Army Court in *Austin* for that matter, intended to fashion a rule that a unit might not conduct a legitimate health-and-welfare inspection if there exists some degree of command suspicion concerning the activities of any of its members. By the same token, we do not accept as a valid or sensible construction of the rule that a *bona fide* unit inspection might reveal admissible evidence only against individuals who had previously avoided command suspicion. We find that the military judge properly denied the motion to suppress the results of the testing of appellant's urine which was collected pursuant to the unit sweep.

■ Having dismissed two of the four specifications of which appellant was found guilty, it is necessary that we reassess the sentence. We have considered the inherently aggravated nature of a fire alarm operator's being found drunk to the point of deep unconsciousness while on duty and the further aggravation of the appellant's urine being tested positive for marijuana more than a month following this incident. We approve only so much of the sentence as provides for a bad conduct discharge, confinement for one year and one day, forfeiture of $426.00 per month for 12 months and reduction to airman basic. The sentence, as reassessed, is appropriate for the remaining findings of guilty. We are convinced that it is no greater than would have been adjudged if findings of guilty at trial had been consistent with the findings we affirm.

We have reviewed the record of trial, the assignment of errors and the government's reply thereto and have concluded that the modified findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused, except as heretofore noted, was committed. Accordingly, the findings of guilty and the sentence, both as modified, are

AFFIRMED.

Senior Judge SESSOMS and Judge STEWART concur.