**UNITED STATES**

v.

**Captain William P. BROWNING,
552–98–9201 FR, United States
Air Force.**

**ACM 26353 (recon).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 15 Sept. 1987.

Decided 7 April 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Lynne H. Wetzell.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Giovagnoni, Lieutenant Colonel Morris A. Tanner, Jr. and Lieutenant Colonel Robert J. Webster, USAFR.

Before SESSOMS, LEWIS and BLOMMERS, Appellate Military Judges.

## DECISION UPON RECONSIDERATION

### PER CURIAM:

Pursuant to his pleas the appellant was found guilty of failing to obey his commander's lawful order, assault and battery and wrongfully communicating a threat. He was sentenced by members to dismissal and forfeiture of $1,000.00 per month for six months. By our earlier decision, dated 11 February 1988, we set aside the finding of guilty of disobedience of a lawful order. We reassessed the sentence and approved only so much as provided for a dismissal and forfeiture of $500.00 per month for six months. Based upon our review of a Suggestion for Reconsideration by appellate government counsel, it is apparent that we did not state our rationale with sufficient clarity. Accordingly, we have agreed to reconsider our prior decision. While we adhere to the result reached previously, we take this opportunity to expand our discussion of the pertinent issue.

 Our rationale is very narrowly based on a commander's authority to order a command-directed examination of a member's urine pursuant to Air Force Regulation 30-2, *Social Actions Program*, paragraph 5–8 (18 April 1986). We do not look beyond this provision to other authority which a commander might possess in this regard. No reasonable inference can be drawn in this case other than the commander's reliance on the authority of the aforementioned provision when he ordered the appellant to provide a urine sample for drug testing. There is one aspect of the provision which is essential for a proper understanding of its operation. The commander's authority to direct a member to provide urine for drug testing is not triggered by an unusual incident, mishap or aberrant behavior *per se*. It is, rather, triggered by the commander's "reasonable suspicion" of drug involvement following notice of such an occurrence. This is the key to paragraph 5–8, *supra*. If a commander reasonably suspects that drugs were involved in a member's unusual be-

havior, he not only may, but he definitely should, order the member to provide a specimen for drug urinalysis. We again invite readers to consider our discussion of this issue in *United States v. Shepherd*, 24 M.J. 596, 599 (A.F.C.M.R.1987).

A portion of paragraph 5–8 of the directive provides: "A command-directed examination may be conducted to determine a member's competency for duty and the need for counseling, rehabilitation, or other medical treatment." Contrary to the argument of appellate government counsel, this language states a purpose for which an examination might be directed, not the basis for the commander's order which directs it. With one exception not relevant for our consideration, all examinations ordered pursuant to paragraph 5–8 are triggered by the commander's reasonable suspicion, notwithstanding the question of what might be done as a consequence of the test result which follows. To construe the provision otherwise would be to ignore the clear import of its language considered as a whole as well as to disregard what occurs in real life situations. A commander does not, as a matter of course, direct drug examinations of predetermined members in a unit unless he has a *reason for* doing so. A command-directed examination, as contemplated by the directive and as accomplished in a real life situation, is ordered because the commander has cause to suspect it should be done, i.e., that a member has ingested drugs. The drafters of paragraph 5–8 have not said otherwise, and neither shall we.

 One should readily glean from our discussion that a reasonable suspicion is not a difficult standard for a commander to satisfy. For instance, the evidence reflects that the appellant had a known history of problem drinking. Did this factor compromise the commander's ability to form a reasonable suspicion of drug use? Absolutely not. *See United States v. Shepherd, supra*. The problem, and the only problem, in the case under consideration is that the commander provided a response to a leading question as to his state of mind at the time he ordered the appel-

# 630

lant to provide a urine sample. The answer was inconsistent with a reasonable suspicion of drug usage. There is some likelihood that he had the requisite reasonable suspicion when he issued the order. It is possible that his words are now being viewed out of context and misconstrued. Unfortunately, he uttered no further words on the issue. The trial counsel, apparently not recognizing the import of the commander's response, made no effort to elicit a clarification or otherwise rehabilitate the witness.

To paraphrase our prior decision, a plea of guilty must be in accord with the actual facts as reflected in the record. *United States v. Moglia*, 3 M.J. 216 (C.M.A.1977); *United States v. Johnson*, 23 U.S.C.M.A. 416, 50 C.M.R. 320 (1975), and 1 M.J. 36 (C.M.A.1975). In this case there was an unresolved discrepancy between the commander's testimony and the appellant's plea of guilty of violating a "lawful" order, a command-direction to provide a urine sample. M.C.M., Part IV, paragraph 16b(2)(a) (1984). Under the circumstances, the plea of guilty was not provident.

The findings of guilty and the sentence, as modified in our prior decision, are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.