UNITED STATES, Appellee,

v.

Robert R. WENZEL, Private, U. S. Army, Appellant.

UNITED STATES, Appellee,

v.

Jack W. WOLFE, Private, U. S. Army, Appellant.

Nos. 33,613; 33,758.
CM 434906.

U. S. Court of Military Appeals.

June 18, 1979.

For Appellant: *Colonel Robert B. Clarke, Captain Robert H. Herring, Jr., Captain D. David Hostler* (on brief); *Lieutenant Colonel John R. Thornock, Captain William B. Ramsey.*

For Appellee: *Major John T. Sherwood, Jr., Major Michael B. Kennett* (on brief); *Colonel Thomas H. Davis.*

For Appellant: *Colonel Robert B. Clarke, Captain Derryl W. Peden, Captain Ralph E. Sharpe* (on brief); *Lieutenant Colonel John R. Thornock, Captain Michael B. Dinning.*

For Appellee: *Colonel Thomas H. Davis, Major John T. Sherwood, Jr., Major Michael B. Kennett* (on brief).

Opinion of the Court

PERRY, Judge:

The appellants were jointly tried and convicted by a general court-martial of sale

and possession of amphetamines, conspiracy to sell and possess amphetamines, and solicitation to sell amphetamines, in violation of Articles 92, 81, and 134, respectively, of the Uniform Code of Military Justice, 10 U.S.C. §§ 892, 881 and 934. Each was sentenced to a dishonorable discharge, total forfeitures, confinement for 2 years, and reduction to the grade of Private E–1. The United States Army Court of Military Review has affirmed the findings and sentences.

The facts are uncontroverted. On at least a dozen occasions Private Robbin related to Captain Rouse, the appellants' company commander, the names of soldiers he suspected of using drugs. He told Captain Rouse that Wenzel and Wolfe, who were barracks roommates, were also selling drugs in the company. On the morning of January 15, 1976, Robbin approached Captain Rouse in his office and turned over to him some amphetamines which he allegedly had bought from Wenzel and Wolfe. Thereupon, Captain Rouse gave Robbin a marked $5.00 bill and instructed him to make another purchase and to return immediately to him. As instructed, Robbin returned to the barracks and purchased some amphetamines from the appellants. Within 10 to 20 minutes later, he relinquished the amphetamines to Captain Rouse. Robbin remarked that if Captain Rouse were going to apprehend the appellants, he ought to hurry, since, upon leaving the appellants' room, he overheard that they were leaving for the post exchange.

On the basis of that information, Captain Rouse and his first sergeant proceeded to the barracks and arrested the appellants. Captain Rouse then took Wenzel and Wolfe back to their room and subjected them to a search. The marked $5.00 bill and some tinfoil were found in Wolfe's wallet. A tinfoil packet which contained white powder, later identified as amphetamines, was discovered in Wenzel's fatigue shirt pocket. Captain Rouse then ordered a thorough search of appellants' room where two other packages of amphetamines were discovered.

At the trial, all the above items were admitted as evidence. The appellants stipulated that the confiscated drugs were shown to be amphetamines upon laboratory analysis and that "examination of both tinfoil packets turned over by Private First Class Robbin to Captain Rouse revealed the presence of amphetamines upon laboratory analysis."

■ Before us, the appellants make several contentions. First, it is contended that the evidence which was discovered and seized during the search of their room should have been suppressed because the commanding officer who authorized the search was not a neutral and detached magistrate for purposes of the Fourth Amendment and that, therefore, the search authorization was invalid. In *United States v. Ezell*, 6 M.J. 307 (C.M.A.1979), we held that military commanders are not *per se* disqualified to act as magistrates in authorizing searches and seizures in cases within their purview. However, while the commanding officer here was not *per se* disqualified, it is clear that in pursuing the laudable purpose of ridding his unit of narcotics and of identifying those who might be involved in the trafficking thereof, he involved himself in the law enforcement venture of ferreting out evidence of crime. The commanding officer was thus disqualified to authorize the room search which led to the discovery and seizure of two packages of amphetamines. *United States v. Ezell, supra.* It follows that the evidence thus seized should have been excluded from use at the appellants' trial.

■■ The appellants also contend that they were unlawfully arrested by the commanding officer and that, therefore, the evidence seized from them (the marked $5.00 bill and tinfoil removed from Wolfe; and the tinfoil packet containing amphetamines removed from Wenzel) was inadmissible as fruit of the poisonous tree. The commanding officer is empowered to arrest persons subject to the Code when he has a "reasonable belief that an offense has been committed and that the person apprehended committed it." Article 7(b), U.C.M.J., 10 U.S.C. § 807(b). Under the above recited facts, we hold that the commanding officer

was justified in the "reasonable belief" that Robbin had purchased amphetamines from the appellants and that one of them would have in his possession the marked $5.00 bill utilized by Robbin in making the purchase. Moreover, one who has the right to arrest also has the concomitant right to conduct a reasonable search incident to that arrest. *United States v. Kinane*, 1 M.J. 309 (C.M.A. 1976); *United States v. Thomas*, 16 U.S.C. M.A. 306, 36 C.M.R. 462 (1966). We, therefore, hold that the marked $5.00 bill, the pieces of tinfoil and the amphetamines discovered during the search of the appellants' persons and seized from them were properly received in evidence.

For the reasons stated above, we reverse that portion of the decision of the United States Army Court of Military Review which approved the admission of the two packages of amphetamines discovered in the appellants' room. The specifications affected by excluding this evidence are specification 2 of Charge I, which alleged that the appellants possessed amphetamines, and the specification of Charge II, which alleged that the appellants conspired to possess and sell amphetamines. Accordingly, the findings of guilty as to those specifications and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence based on the remaining findings of guilty, or to order a rehearing on the specifications which we have set aside and the sentence.

FLETCHER, Chief Judge (concurring):

A commander's primary responsibility is to field an effective fighting force. Attempting to balance this in a given situation with his responsibility to be a neutral and detached magistrate for the purpose of issuing a search warrant can not be logically accomplished without some dissipation of his principal objective. My Brother Cook would rely not only upon the responsibility to field a fighting force but more specifically on the necessity to be in a state of "ready alert" to almost totally restrict a service person's rights under the Fourth Amendment. Judge Perry in comparison would test a service person's Fourth Amendment rights by use of the Supreme Court's judicial interpretation, creating a direct legal parallelism of the military society and the larger society of which it forms a part.

Neither position seems reasonable to me. Persons entering military service and assuming the mission of defense do not expect to serve their country by totally laying down their constitutional Fourth Amendment rights, but neither does the citizen-soldier shoulder his "readiness" burden at no disciplinary cost. Logic directs us to a middle ground.

Given to a commander is the tool of the traditional military inspection which allows him examination of the overall fitness of a unit to perform its military mission. Under such an inspection the "plain view" doctrine obtains. Furthermore, this Court has allowed reasonable searches and seizures in certain exigent circumstances. *United States v. Hessler*, 4 M.J. 303 (C.M.A.1978).[1] Neither of these tools, properly employed, leads to evidence excluded as inadmissible.

If a specific person or area is to be searched, then let the process be that a warrant "shall issue, . . . upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized,"[2] and obtained from a neutral and detached magistrate, a designated judge, or a magistrate legally trained. Command at all levels could be assured that upon their presentation of the facts to this legally trained person that the probability of an adequate warrant would be sustained throughout the judicial process. War or hostile action would, of course, fall within the exigent circumstances concept, as would those military areas of such distance from a legally trained judicial person that a timely search warrant could not be obtained.

---

1. Decision on reconsideration 7 M.J. 9 (C.M.A. 1979).

2. U.S.Const. amend. IV.

I perceive this middle posture as providing command with the necessary tools for a "move out" order, while still giving to the specific military person the dignity of some right of privacy.

Using the "ad hoc" approach as prescribed by *United States v. Ezell*, 6 M.J. 307 (C.M.A.1979), I concur.

COOK, Judge (concurring in part and dissenting in part):

I agree that the arrests were proper. However, on the basis of my separate opinion in *United States v. Ezell*, 6 M.J. 307, 330 (C.M.A.1979), I disagree with the conclusion that the authorization to search was improper. Accordingly, I would affirm the decision of the United States Army Court of Military Review. My view of the service person's rights under the Fourth Amendment is fully and, I believe, understandably explicated in my opinions on the subject. Anyone can conclude what he wishes from them, but no language in any opinion bears a resemblance to the text of the Chief Judge's statement of my view.

As to the Chief Judge's view of the issue, I am impelled to register my disagreement. He comments as follows:

> If a specific person or area is to be searched, then let the process be that a warrant "shall issue, . . . upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," and obtained from a neutral and detached magistrate, a designated judge, or a magistrate legally trained. [Footnote omitted.]

This procedure is not required by the Chief Judge in the present case. However, he has said in his separate opinion in *United States v. Ezell, supra* at 330, that:

> Henceforth, my resolution of these search and seizure issues on grounds of reasonableness will take into consideration the failure of the commander to refer his decision to search for review and action to a military judge or magistrate in those situations which the above analysis renders applicable. [Footnote omitted.]

He does not elaborate as to whether a failure to comply with the procedure will invoke the exclusionary rule.

Paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition), specifically sanctions searches authorized by commanding officers. The Chief Judge does not hold that this Manual provision is unconstitutional. Indeed, such a holding would be inconsistent with numerous decisions of this Court and several cases decided by the civilian courts as well.[1] By what authority does he now postulate the prospect of a new rule? I fear that he embarks on a course that is inconsistent with existing law and beyond the Court's power to change.

---

1. *Wallis v. O'Kier*, 491 F.2d 1323 (10th Cir. 1974), *cert. denied*, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974); *United States v. Grisby*, 335 F.2d 652 (4th Cir. 1964); *United States v. Head*, 416 F.Supp. 840 (S.D.N.Y.1976), *aff'd*, 546 F.2d 6 (2d Cir. 1976).