UNITED STATES, Appellee,

v.

Specialist Four Toney N. GEORGE, Jr.,
SSN 520–72–0124, United States
Army, Appellant.

SPCM 14090.

U. S. Army Court of Military Review.

4 April 1980.

608

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Grifton E. Carden, JAGC, and Captain Peter A. Nolan, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Major Robert B. Williams, JAGC, and Captain Lawrence W. Fitting, JAGC, were on the pleadings for appellee.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

GARN, Judge:

The appellant was charged with possessing an unregistered firearm contrary to the provisions of a lawful general regulation, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, and wrongfully possessing marihuana, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was found not guilty of the alleged possession of an unregistered firearm offense, but, despite his plea to the contrary, guilty of wrongfully possessing marihuana. He was sentenced to be discharged from the service with a bad-conduct discharge, to be confined at hard labor for five months, to forfeit $275.00 pay per month for five months, and to be reduced to the grade of Private E-1.

I

The appellant was stopped by a military policeman for speeding. While waiting for the appellant to produce his identification, the military policeman saw several sandwich bags on the transmission hump be-

tween the front seats of the appellant's automobile. Suspecting the bags contained marihuana, he ordered the appellant to get out of his automobile and, without advising the appellant of any of his rights, questioned the appellant about the bags. The appellant responded that the bags contained bread crumbs and told the military policeman that if he didn't believe him he could "check them out." The military policeman then leaned through the open window of the car door and seized the bags. He found nothing in the bags warranting further inspection of them, and again leaned through the open window and replaced the bags. As the military policeman was extricating himself, he observed the handle of a pistol in a map case in the car. He seized the pistol and apprehended the appellant. Appellant was taken to the military police station and searched. A bag containing a small amount of marihuana was found in a pocket in his overalls. Small scales also were discovered. After being advised of, and waiving, his rights to remain silent and to counsel, the appellant acknowledged ownership of the marihuana found in his overalls.

Initially, we find as a matter of fact that, under the circumstances, the appellant's invitation to check out the sandwich bags included, by clear implication, his consenting to both of the military policeman's entries into his automobile. The lack of advice that he did not have to consent, even though he had been detained, does not require that we conclude, for policy reasons, that his consent was not voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). We are satisfied that this consent to the military policeman's entries into his automobile was voluntary, as well as volunteered.

When a law enforcement agent is at, or in, a place lawfully, it is not improper for him to look around. *United States v. Burnside*, 15 U.S.C.M.A. 326, 35 C.M.R. 298 (1965). The discovery and seizure of the pistol did not contravene the Fourth Amendment to the United States Constitution. *See United States v. Burnside, supra; see also United States v. Summers*, 15 U.S. C.M.A. 573, 33 C.M.R. 105 (1963); *United States v. Cruz*, 3 M.J. 707 (A.F.C.M.R.1977); *cf. United States v. Dichiarinte*, 445 F.2d 126 (7th Cir. 1971) (seizure of evidence outside scope of consent improper; however, evidence was not in plain view and defendant protested seizure). The subsequent discovery of the marihuana in the appellant's pocket following his lawful apprehension was also compatible with the Fourth Amendment. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

We have also considered carefully whether the evidence should have been excluded because of the causal connection between military policeman's violation of Article 31, UCMJ, 10 U.S.C. § 831, and the discovery of the evidence against the appellant.

Article 31 prohibits the admission into evidence of statements obtained in violation of that article of the UCMJ. Consenting to a search, even when the results of the search are incriminating, however, is not a statement within the meaning of Article 31. *United States v. Insani*, 10 U.S.C. M.A. 519, 28 C.M.R. 85 (1959); *See also United States v. Morris*, 1 M.J. 352 (C.M.A. 1976), and *United States v. Rushing*, 17 U.S.C.M.A. 298, 38 C.M.R. 96 (1967). Accordingly, the appellant's voluntary invitation to search, following his exculpatory response to the military policeman's questioning, was not an inadmissible statement because of the provisions of Article 31.

Paragraph 150*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), requires the exclusion of "any evidence obtained as a result of information supplied by" a compelled statement. The appellant's statement was not compelled, and no evidence was obtained as a result of information supplied by his statement.

Having concluded that neither the Code nor the *Manual* require exclusion of the evidence derived from the appellant's

consent to the military policeman's entries into his automobile, given as part of a reply to a question violating Article 31, we have also considered the possible applicability of the exclusionary rule known as the "fruit of the poison tree" doctrine.

While we have not found any case involving exactly the same derivative evidence issue with which we are confronted in this case, we have found some involving similar issues. In *United States v. Ball*, 6 U.S.C. M.A. 100, 19 C.M.R. 226 (1955), the Court of Military Appeals considered whether evidence, *i. e.*, handwriting exemplars,[1] not amounting to a statement within the meaning of Article 31, obtained as a result of an unlawful inducement, should have been excluded because of the "fruit of the poison tree" doctrine. In *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), the Supreme Court considered the admissibility of evidence, *i. e.*, the testimony of a witness favorable to the prosecution, derived from a statement not preceded by all the advice required by that Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In both cases the Courts concluded that the doctrine did not require exclusion of the evidence and that the underlying purposes of the doctrine would not be served by applying the doctrine to the evidence derived as a result of the improper police conduct. *Ball* is similar to this case because both involve evidence, other than a statement, derived from police conduct which, although unlawful, did not

violate the Constitution. *Tucker* is similar to this case because both involve evidence discovered as a result of something a suspect said in reply to questioning by government agents who had not properly advised him of his rights.[2]

In this case there was no exploitation of evidence obtained by violating the Constitution. *Cf. Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[3] The primary purpose of the exclusionary rule is to deter, not punish, unlawful activity by government agents. *See, e. g., Michigan v. Tucker, supra.* Had the military policeman merely asked the appellant for the consent the appellant offered, the military policeman's request would have been lawful. *United States v. Morris, supra.* We do not see how excluding evidence obtained as a result of a consent to search, that could have been lawfully requested, will serve to deter misconduct by government agents in the future. Accordingly, we hold that the evidence that flowed from the military policeman's questioning of the appellant was admissible even though the military policeman violated Article 31 when he questioned the appellant.

## II

After the appellant had acknowledged ownership of the marihuana found in his overalls, the military policeman who had questioned him asked the appellant if more marihuana would be found if the military

---

1. In *United States v. Minnifield*, 9 U.S.C.M.A. 373, 26 C.M.R. 153 (1958), the Court of Military Appeals overruled the determination in *United States v. Ball*, 6 U.S.C.M.A. 100, 19 C.M.R. 226 (1955), that a handwriting exemplar is not a statement within the meaning of Article 31. *But see United States v. Euge*, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980). That does not affect the principles to be applied when evidence is not considered to be such a statement, however.

2. Both cases are distinguishable from this case. In *Ball* there was no violation of Article 31. In *Tucker* the statement was obtained before *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was decided, and the police complied with the law then in effect. Comparing the effects of failing to comply with Article 31 and failing to comply with *Miranda*

is useful because both were designed to protect rights secured by the Constitution, but neither is required by the Constitution. Consequently, failure to comply with the advice and warning requirements of either does not necessarily violate the Constitution. *Michigan v. Tucker, supra; United States v. Ball, supra.*

3. *See* Note 2, *supra.* When unlawful activities by government agents do not violate the Constitution, exclusion of evidence on the basis of the "fruit of the poison tree" doctrine might not be proper. *See United States ex rel. Hudson v. Cannon*, 529 F.2d 890 (7th Cir. 1976); *United States v. Massey*, 437 F.Supp. 843 (D.C.1977), both citing *Michigan v. Tucker, supra.* In *Tucker*, however, the Court avoided deciding the case on that basis alone.

police returned to his automobile. The appellant said no. Subsequently, when the appellant was in a detention cell, the military policeman who had apprehended him advised him that the military police would like to search his automobile, and asked if the appellant would mind if they did. The appellant was not advised he could refuse to accede to the request. The appellant said something to the effect of "you might as well" with what the military policeman characterized as "resigned affirmation." The military policeman then got the appellant's key ring. The appellant removed his car key and handed it to the military policeman. When the appellant's automobile was searched, five bags containing marihuana were discovered in a larger bag under the driver's seat and additional marihuana was scraped off the floor, and placed in a bag.

■ The only basis for upholding the search of the appellant's automobile is that the appellant consented to the search. When the Government seeks to justify a search on the basis of consent, the Government has the burden of demonstrating by clear and convincing evidence that the consent was freely given. Paragraph 152, MCM, 1969 (Rev.). All the circumstances must be considered in determining whether the consent was freely given, i. e., voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Extra caution is required when the individual giving consent is in police custody. *United States v. Decker*, 16 U.S.C.M.A. 397, 37 C.M.R. 17 (1966). The status of being under arrest, or, in military legal parlance, under apprehension, however, does not vitiate a voluntary consent to search. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Decker, supra.* Nor does lack of advice, nor lack of showing, that the individual knew of the right to refuse to consent vitiate an otherwise voluntary consent. *Schneckloth v. Bustamonte, supra.*

In *Schneckloth v. Bustamonte* the Supreme Court expounded the meaning of the word "voluntary" in the context of determining whether consent to a search is vol-

untary. Essentially, the Court concluded that consent is voluntary unless, under all the circumstances, it is coerced or given by one whose capacity to make a free choice is critically impaired. In a subsequent case the Court made it clear that in determining whether consent to a search was voluntary, the focus should be on the conduct of the police, and whether their conduct was coercive. *United States v. Watson*, 423 U.S. at 424–25, 96 S.Ct. at 828. Bearing in mind that the appellant was in a detention cell when he consented to the search of his automobile, we have carefully analyzed the evidence to determine whether there was any conduct by the military police that may have coerced the appellant to consent.

■ The Supreme Court has determined that a claim by a government agent of lawful authority to search is coercion, and that mere submission to such a claim is not voluntary consent. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The only evidence indicating that the appellant's consent may have been coerced is the evidence that a military policeman asked him if marihuana would be found if the military police returned to his car coupled with the evidence that the appellant displayed an attitude of resignation when he subsequently consented. We have considered the possibility that the military policeman may have implicitly claimed that the military police had authority to search the appellant's automobile when he asked that question and the possibility that the appellant's subsequent apparent attitude of resignation indicates mere submission to that arguably implicit claim of authority. The evidence that the military policeman who asked for, and obtained, the appellant's consent to search told the appellant that the military police wanted to search, and asked the appellant if he minded, constitutes, in our view, clear and convincing evidence dispelling any possibility that the appellant may have merely submitted to an implied claim of lawful authority. We have been unable to discern any other evidence indicating possible coercion by any government agent.

The appellant's trial defense counsel cross examined the witnesses called by the prosecution to establish the appellant's consent and the facts and circumstances surrounding that consent. He did not choose to present any additional evidence bearing on the issue. There is no evidence indicating that the appellant's capacity to make a free choice was critically impaired nor evidence, other than that referred to in the preceding paragraph, even suggesting that the appellant's consent was involuntary. The Government sustained its burden. We are satisfied that the military judge's determination that the appellant voluntarily consented to the search of his automobile was correct.

### III

 The appellant also argues that the bags containing marihuana purportedly found in his overalls pocket and automobile should not have been admitted into evidence because the evidence was not shown to be relevant. About three hours elapsed between the time the appellant was apprehended and the contents of the bags were tested by a military policeman. The evidence indicates, and we assume, that between the times of the seizures and the time the contents of the bags were tested, the bags were in the custody of a person or persons who did not testify. The evidence also shows, and we find, that from the times of the seizures until the time of the testing, the bags were in the custody of military police authorities. The military policemen who seized the evidence and the military policeman who tested the contents of the bags testified as to the identity of the bags. Without evidence to the contrary, we may, and do, assume that the contents of the bags were not altered when the bags were in the custody of any of the military police authorities. *United States v. Ortiz*, 9 M.J. 523 (A.C.M.R.1980). The military judge did not err when he admitted the bags and their contents into evidence. That evidence, as well as other ad-

missible evidence in the case, sufficiently satisfies us that the appellant wrongfully possessed marihuana.[4]

### IV

 We have also considered the appellant's argument that a punitive discharge is inappropriate in his case. His almost three years of service was generally commendable. However, he had been previously disciplined for wrongful possession of marihuana and the amount, number of bags, and the scales found in the appellant's possession are aggravating factors warranting a punitive discharge.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge LEWIS concur.

---

4. No amount of marihuana was alleged in the specification. It is clear, however, that appellant was convicted of wrongfully possessing the marihuana found in his overalls and in his automobile.