UNITED STATES, Appellee,

v.

Private First Class James A. THOMAS, SSN 201–48–2088, United States Army, Appellant.

CM 439192.

U. S. Army Court of Military Review.

13 Jan. 1981.

---

Captain Edwin S. Castle, JAGC, argued the cause for appellant. With him on the pleadings were Lieutenant Colonel John F. Lymburner, JAGC, and Major Grifton E. Carden, JAGC.

Captain Paul K. Cascio, JAGC, argued the cause for appellee. With him on the pleadings were Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, and Captain Rexford T. Bragaw, III, JAGC.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

GARN, Judge:

The appellant was convicted by the members of a general court-martial of wrongfully possessing and wrongfully using heroin in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a dishonorable discharge, confinement at hard labor for one year, forfeiture of four hundred dollars pay per month for one year, and reduction to the grade of Private E–1.

During the late evening hours of the day before payday, two military police agents, Barham and Flahive, were engaged in a surveillance operation in the Mainz, Germany train station. They had substantial reasons, based on their experiences and police intelligence information, to believe that soldiers arriving there from Frankfurt, Germany, that evening might be engaged in illegal drug activities. At about 2300 they saw the appellant and a Specialist Lockett get off a train that had just come from Frankfurt.

The agents knew that Specialist Lockett had been apprehended about a month earlier and found in possession of a significant quantity of heroin and that informants had indicated he was a seller of that substance. The appellant and Specialist Lockett both appeared to be slightly intoxicated and euphoric. When the appellant saw Special Agent Barham approach him, however, he "became very tense." Special Agent Barham stopped the appellant, identified himself, and asked the appellant, who was dressed in civilian attire, for his identification card. The appellant appeared to be very nervous and was very slow both in extracting a sewing kit, which he used as a wallet, from his pocket and in extracting his identification card from his sewing kit. Special Agent Barham then asked the appellant where he had been and what he had been doing. The appellant responded that he had been in Frankfurt "partying." Special Agent Barham noted the absence of any odor of alcohol and also noted that the pupils of the appellant's eyes were constricted.

In the meantime, Special Agent Flahive, who had stopped Specialist Lockett and was about six feet away from Agent Barham and the appellant, had made similar observations concerning Specialist Lockett and concluded that Specialist Lockett was under the influence of heroin. Special Agent Flahive, who had special training and over nine years of investigative experience regarding illegal drugs, knew that constricted eye pupils indicated the use of heroin. Special Agent Flahive then turned his attention to the appellant and, noting the absence of any odor of alcohol and the appellant's constricted pupils, concluded that the appellant also had used heroin. Special Agent Flahive then notified both Specialist Lockett and the appellant that they were under apprehension. Approximately five minutes elapsed between the stop and the formal apprehension.

After the apprehensions, Agent Barham, believing that there might be heroin in the appellant's sewing kit, and fearing that the appellant might dispose of it, took the sewing kit from the appellant. He then opened the sewing kit, and a packet containing the heroin that the appellant was eventually convicted of possessing fell out.

At his trial, and before us, the appellant has argued that his being stopped, detained, and apprehended, and the search of his sewing kit violated the protections afforded him by the Fourth Amendment.

I

The Fourth Amendment does not prohibit a police authority from stopping, and detaining for a brief period of time, a person who the police authority reasonably suspects is engaged in criminal activity. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Before Specialist Agent Barham stopped the appellant, he observed him get off a train from a place he knew illegal drugs were commonly sold, at a time of the month when such sales were more likely to occur, apparently in the company of a person he had good reason to believe sold heroin. Additionally, Special Agent Barham noted that the appellant exhibited signs of intoxication and euphoria until he saw he was being approached, at which time he appeared tense. Those factors provided Special Agent Barham with articulable, and, in our opinion, objectively reasonable suspicion sufficient to justify his stopping the appellant.

Special Agent Barham's police authority only extended to members of the United States armed forces. The appellant was dressed in civilian clothes in a public place in a foreign country. Under those circumstances, asking the appellant to produce an identification card was appropriate and reasonable. When the appellant complied, his nervousness and unusually slow movements provided a basis for continuing his temporary detention for the purpose of further investigation. Noting the absence of any odor of alcohol, and then seeing the appellant's constricted pupils, provided Special Agent Barham with additional reasons for detaining the appellant for the brief time that elapsed before Special Agent Flahive finally decided that the appellant should be apprehended. We are satisfied, therefore, that the brief detention of the appellant was reasonable and did not violate his Fourth Amendment rights.

While reasonable suspicion is sufficient for a stop and brief detention, the military equivalent of probable cause, *viz.*, reasonable belief, is required for the military equivalent of an arrest, *viz.*, an apprehension. Article 7, Uniform Code of Military Justice, 10 U.S.C. § 807; *United States v. Powell*, 7 M.J. 435 (C.M.A.1979); *United States v. Fisher*, 5 M.J. 873 (A.C.M.R.1978); *United States v. Pope*, 3 M.J. 1037 (A.F.C. M.R.1977). In our view, the appellant was not apprehended until Special Agent Flahive informed him that he was under apprehension. *See United States v. Kinane*, 1 M.J. 309 (C.M.A.1976) (clear notification necessary for apprehension). Special Agent Flahive had seen the appellant's suspicious actions before the appellant was stopped by

Special Agent Barham. He had extensive experience relating to illegal drugs. Although the appellant had appeared to be intoxicated, Special Agent Flahive noted the absence of any odor of alcohol. He had, on the basis of substantial criteria, just concluded that the appellant's companion had used heroin. The final and most important indicator that the appellant probably had used heroin was the constriction, or "pinpointed" appearance, of the pupils of the appellant's eyes which,[1] when taken together with all the other surrounding circumstances known to Special Agent Flahive, provided sufficient probable cause to justify his apprehending the appellant.

 After the appellant had been apprehended lawfully, the agents properly could search him, incident to his apprehension, without further authorization and without regard for probable cause, to determine whether he had any weapons or destructible evidence in his possession. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). At his trial, counsel for the appellant argued that, because Special Agent Barham had exclusive control of the appellant's sewing kit when he searched it, the search was improper in view of the Supreme Court's holding in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In *Chadwick*, the Supreme Court held that a warrantless search of a locked footlocker in the sole possession of police authorities was improper, and that the search incident to arrest doctrine was inapplicable because the trunk was not personal property "immediately associated with the person of the arrestee ...." *Chadwick* at 15, 97 S.Ct. at 2485. In effect, appellant's trial defense counsel argued that the sewing kit was no longer "immediately associated with the person" of the appellant after Special Agent Barham took

it and, consequently, his search of the appellant's sewing kit could not be justified as incident to the appellant's apprehension.

 The notion that any personal property is no longer subject to a lawful search incident to arrest once the police have exclusive possession of the property is negated, however, by the holding in *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). In *Edwards*, the Supreme Court upheld a warrantless search of the clothing of an arrestee as being incident to his arrest even though the clothing, which the arrestee had been wearing at the time of his arrest, had been removed from him by the police. In *United States v. Berry*, 560 F.2d 861 (7th Cir. 1977), the Circuit Court of Appeals considered the types of personal property that could no longer be searched incident to arrest in view of the holding in *Chadwick, supra*. Although that Court determined that an attache case seized by the police in that case could not be searched incident to arrest, the opinion in *Berry* makes it clear that a search of a purse being carried by, or personal property found in the pocket of, an arrestee at the time of a lawful arrest should be upheld as being incident to the arrest. Moreover, warrantless searches of wallets have been upheld as being incident to arrest even though, obviously, the wallets were in the exclusive control of the arresting authorities when the wallets were searched. *United States v. Simpson*, 453 F.2d 1028 (10th Cir. 1972), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972); *United States v. Wenzel*, 7 M.J. 95 (C.M.A.1979).[2] We hold that a wallet, or the functional equivalent of a wallet, being carried at the time of a lawful arrest, is "personal property immediately associated with the person of the arrestee" within the meaning of *Chadwick* and may be taken and searched, at least at the time and place

---

1. The Government presented the testimony of a medical doctor which showed the objective accuracy of Special Agent Flahive's belief that constricted eye pupils strongly suggest heroin use.

2. *Simpson* was decided before *Chadwick*, however, and *Chadwick* was not expressly considered in *Wenzel*.

of the arrest, without further authorization and without probable cause.[3]

In view of the foregoing, we are satisfied that neither the ultimate search of the appellant's sewing kit, nor the stop, detention, and apprehension of the appellant preceding that search, violated any Fourth Amendment right of the appellant.

## II

■ When Special Agent Barham questioned the appellant about his activities he suspected the appellant of having unlawfully used heroin. He should, therefore, have advised the appellant of his rights, including the right to remain silent, in accordance with the provisions of Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, before questioning him.[4] There was no affirmative showing that such advice was given in this case. Accordingly, the appellant's statement in response to questioning that he had been "partying" in Frankfurt should not have been admitted in evidence against him. Article 31(d), Uniform Code of Military Justice, 10 U.S.C. § 831(d); paragraph 140a (2) and (6), Manual for Courts-Martial, United States, 1969 (Revised edition).[5]

■ The issue of whether the appellant was advised and warned in accordance with Article 31, *supra*, was not raised at his trial. Possibly he was warned, although it appears that he was not. Appellate counsel for the appellant, in a footnote in their brief, assume that he was not and argue that he was compelled to participate in the production of self-incriminating evidence in violation of Article 31, citing *United States v. Kinane*, 1 M.J. 309, 311, n.1 (C.M.A.1976). Implicitly the argument seems to be that requiring the appellant to produce his identification card violated Article 31. In *Kinane*, however, the investigator did not ask the accused, whom he suspected of theft, for his identification card; rather, he effectively asked the accused to produce identification cards he suspected the accused had stolen. We agree with Chief Judge Everett's opinion to the effect that requesting a person to identify himself does not require advice and warning in accordance with Article 31. *See United States v. Davenport*, 9 M.J. 364, 369 (C.M.A.1980).

Although not raised, we have considered whether the exclusionary rule should be applied to evidence obtained subsequent to the appellant's statements, assuming they were obtained in violation of Article 31. The only specific statement reflected in the record was that he had been "partying" in Frankfurt. We are confident that any other statements he may have made were no more incriminating than this one.

The exclusionary rule is generally designed to prevent the Government's use of evidence against an individual when that evidence has been obtained by means of violating a fundamental right of that individual. The statutory, as opposed to constitutional, nature of the assumed violation in this case militates against application of the

---

3. Additionally, the practicalities of the situation should be considered together with the applicable legal principles. In accordance with search incident to arrest principles, Special Agent Barham properly could and should have kept the sewing kit out of the appellant's control until he was somehow satisfied that it did not contain a weapon or destructible evidence, or until the appellant was released from custody. Under those circumstances an official inventory of the contents of the appellant's sewing kit to protect against a claim of pilfering would have been justified. *See South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Kelehar*, 470 F.2d 176 (5th Cir. 1972); *United States v. Lipscomb*, 435 F.2d 795 (5th Cir. 1971). Moreover, a lengthy detention of the appellant's sewing kit would have resulted in depriving him of his possessory rights to the contents of what he was using as a wallet. Under the circumstances, Special Agent Barham's choice of which interest, *i. e.* privacy or possessory, should be invaded was not unreasonable.

4. The advice and warning requirements of Article 31 are triggered by suspicion rather than custody. Accordingly, in a "street encounter" situation, a military police authority is required to advise and warn a suspect before questioning when a civilian counterpart might not have a similar obligation.

5. In arriving at our determination that there were sufficient bases for the stop, brief detention, and apprehension of the appellant, we have not considered that inadmissible evidence.

exclusionary rule. *See Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); *United States v. Ball,* 6 U.S.C.M.A. 100, 19 C.M.R. 226 (1955); *United States v. George,* 9 M.J. 607 (A.C.M.R.1980). More importantly, we are satisfied that, because there was virtually no causal connection between whatever information the appellant may have imparted in unwarned statements and the agents actions, the agents did not exploit any unlawfully obtained evidence, or information. *Cf., Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Peurifoy,* 22 U.S.C.M.A. 549, 48 C.M.R. 34 (1973); *United States v. Atkins,* 22 U.S.C.M.A. 244, 46 C.M.R. 244 (1973). Rather, their stop, detention, and apprehension of the appellant, leading to the search of his sewing kit and the discovery of the heroin, were premised principally, if not solely, on their observations of the appellant's physical characteristics and mannerisms and information they had obtained from other sources. Accordingly, we are satisfied that, even assuming a violation of Article 31 occurred, exclusion of the evidence of the subsequently discovered heroin on that basis is not required.

### III

▮▮▮ The appellant also argues that the evidence that he wrongfully used heroin is insufficient to sustain his conviction of that offense. A detailed recitation of the evidence would serve no useful purpose. Suffice it to say that the substance of the Government's evidence has been alluded to above. The defense presented evidence tending to show that a blood sample taken from the appellant when his blood should have contained evidence of heroin use, had he used it on the date alleged, did not reveal such evidence. Moreover, the appellant's pretrial statement that he had been "partying" in Frankfurt was allowed in evidence in the presence of the members of the court-martial without any foundation for the admissibility of that statement having been laid. Generally, the erroneous admission of a pretrial statement requires reversal of a conviction infected by that error. *United States v. Hall,* 1 M.J. 162, 163 (C.M. A.1975); *United States v. Kaiser,* 19 U.S.C. M.A. 104, 41 C.M.R. 104 (1969). In view of the evidence tending to raise reasonable doubt and the erroneous admission of the appellant's statement, we have concluded that the appellant's conviction of wrongfully using heroin should be set aside.

The finding of guilty of Specification 2 of the Charge is set aside and that specification is ordered dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for one year, forfeiture of $400.00 pay per month for nine months, and reduction to the grade of Private (E–1).

Judge LEWIS concurs.

JONES, Senior Judge, concurring in part and dissenting in part:

I agree with Judge Garn that appellant's conviction of heroin use must be reversed but I disagree that the possession charge can be affirmed.

The agents found heroin in appellant's sewing kit during a search of his person incident to apprehension. The apprehension in turn was based on several factors which the military judge at trial and the majority here determined amounted to probable cause. Among those factors was the response by appellant to an inquiry which was made in violation of Article 31(b). Absent appellant's response that he had in fact been to Frankfurt and had been "partying", I am not satisfied that probable cause existed to apprehend. I believe the observation of the pupils and the absence of an odor of alcohol flowed to a significant degree from the unwarned statement. Therefore the evidence necessary for probable cause to apprehend was presumptively tainted and the evidence of attenuation of that taint was insufficient. Under that circumstance, the evidence derived from the search incident to apprehension was also

tainted and should not have been admitted. *United States v. Atkins*, 22 U.S.C.M.A. 244, 46 C.M.R. 244 (1973); *United States v. Haynes*, 9 U.S.C.M.A. 792, 27 C.M.R. 60 (1958). *See United States v. Collier*, 1 M.J. 358 (C.M.A.1976). *But see United States v. George*, 9 M.J. 607 (A.C.M.R.1980).