**UNITED STATES, Appellee,**

v.

**Private First Class Robert L. GLADDIS, SSN 375–58–1623, United States Army, Appellant.**

**SPCM 14924.**

U. S. Army Court of Military Review.

24 July 1981.

---

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Elliot J. Clark, Jr., JAGC, and Captain James A. McAtamney, JAGC, were on the pleadings for the appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Major Douglas P. Franklin, JAGC, and Captain David H. Johnson, JAGC, were on the pleadings for the appellee.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

GARN, Judge:

The appellant was tried by a military judge sitting as a special court-martial with authority to adjudge a bad-conduct discharge, at Schweinfurt, Federal Republic of Germany on 7 March 1980. Contrary to his pleas, he was convicted of violating a lawful general regulation by possessing a hypodermic syringe and needle, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, and of possession of heroin, and use of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, and reduction to the grade of Private E–1.

On the evening of 29 December 1979, two uniformed military policemen, Specialists Murrow and Keever, were dispatched to assist an American serviceman who was having difficulty breathing. Upon arrival at the reported location, they found the appellant being placed in a German ambulance. Specialist Murrow rode in the ambulance with the appellant to the U. S. Army dispensary at Ledward Barracks in Schweinfurt. During this ride Specialist

Murrow made no attempt to search or pat down the appellant.

Upon arrival at the dispensary the appellant was examined by Chief Warrant Officer Schick, the duty physician's assistant. Mr. Schick, based on his examination of the appellant formed the opinion that the appellant was suffering from a "heroin-type overdose." He conveyed this opinion to Specialist Murrow who was standing by to give medical assistance if needed. The appellant was treated with injections of narcane, an opiate-specific antidote, to which he responded rapidly. Appellant was also prepared for injections of an intravenous solution. This preparation involved cutting away the clothing from his upper body, including his coat.

As the coat was being cut and pulled away from the appellant's body, the lapel of the coat opened up so that Specialist Murrow was able to see about two inches of the handle of what he thought to be a spoon in a pocket of the coat. Initially, Specialist Murrow testified that he extracted the spoon from the appellant's pocket because "it looked like a government spoon". Ultimately, however, he testified to the effect that the reason he removed the spoon was that Mr. Schick had told him the appellant's condition was a result of an overdose of heroin. It is also apparent from his testimony that Specialist Murrow knew that spoons are commonly used to prepare heroin for injection.

After he removed the spoon from the coat pocket, Specialist Murrow noted that the bottom of the bowl was blackened and the inside of the bowl contained a residue which he thought could have been heroin or some type of drug. Specialist Murrow then searched the pockets of the coat and found a hypodermic needle and syringe. Laboratory analysis later revealed the residue in the bowl of the spoon to be heroin.

At his trial, and before this Court, the appellant has argued that prosecution exhibit 3 (the laboratory report) and the testimony of Specialist Murrow pertaining to the hypodermic needle and syringe taken from his pocket were not admissible because there was no probable cause to justify Specialist Murrow's actions and, in any event, there were no exigent circumstances justifying the search without the military analogue of a warrant.

## I

The first issue to be resolved is whether Specialist Murrow's seizure of the spoon was lawful. When a police official is at a place he has a right to be and it is "immediately apparent" to him that something he sees is evidence of a crime, his seizure of that evidence without a warrant is justified under the "plain view" doctrine. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Clearly Specialist Murrow was where he had a right, if not a duty, to be when he saw the handle of the spoon protruding from the pocket of the appellant's jacket.

Although the entire spoon was not observable before it was removed from the appellant's pocket, Specialist Murrow's seeing the handle of what appeared to him to be a spoon after being told by a physician's assistant that the appellant was unconscious as a result of an overdose of heroin, coupled with Specialist Murrow's apparent knowledge that spoons commonly are used to prepare heroin for injection, provides a substantive basis for our concluding that it was "immediately apparent" to Specialist Murrow that what he saw was evidence of a crime. *Cf. United States v. Woods*, 560 F.2d 660 (5th Cir. 1977) (admission of sawed off shotgun upheld under "plain view" doctrine even though only end of barrel could be observed before policeman removed it from cabinet). Additionally, Specialist Murrow's removal of the spoon and looking at the bowl, whether characterized as a seizure, or a search, or both, or neither, constituted no more than a slight invasion of the appellant's protected property and privacy interests. *Cf. Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("search" and "seizure" not talismans governing determination of reasonableness; scope of search relevant to reasonableness).

Because the intrusiveness was limited, *cf. Michigan v. Summers*, —— U.S. ——, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) ("character of the official intrusion" relevant to determination that seizure of person without probable cause was reasonable), and because at least the handle of the spoon was in plain view before it was removed from the pocket of the appellant's jacket, we are satisfied that Specialist Murrow's removing the spoon and looking at it were reasonable within the meaning of the Fourth Amendment. Once Specialist Murrow saw that the bowl of the spoon was blackened and contained what appeared to be residue of a drug, his retention of the spoon as evidence, which undoubtedly constituted a seizure, was clearly justified under the "plain view" doctrine.

## II

■ The ensuing search of the pocket of the appellant's jacket involved a more substantial invasion of his protected privacy interests. A search without a warrant generally is unreasonable unless there is an exigent circumstance or other reasonable justification for conducting the search without a warrant. *See, e. g., Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ A commonly recognized reasonable justification for a search without a warrant is a search conducted incident to an arrest. After Specialist Murrow had extracted the spoon and observed the condition of the bowl, he clearly had a justifiable basis for apprehending the appellant and conducting a search incident to that apprehension.[1] Apparently, and not surprisingly, it did not occur to Specialist Murrow that he should

formally apprehend the appellant. Such a formality would have been ridiculous, if not impossible, under the circumstances. The appellant was either unconscious or semiconscious and obviously was within the control of the police and medical authorities. This Court previously has upheld a search as being incident to apprehension in virtually identical circumstances. *United States. v. Lotze*, 50 C.M.R. 234 (ACMR 1975).[2]

Rather than simply relying on *Lotze* as authority for upholding the search of the pocket of the appellant's jacket, we have considered subsequent Supreme Court cases relating to the lawfulness of searches incident to arrest. In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) the Supreme Court held that a search of the defendants' locked footlocker conducted long after the defendants were securely in custody could not be justified as incident to their arrest. In what appeared to be a formulation of an underlying principle, or at least guidance for inferior courts and law enforcement personnel, the Court stated:

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest. *United States v. Chadwick, supra* at 15, 97 S.Ct. at 2485.

In the more recently decided case of *New York v. Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the question of the lawfulness of a search of the zippered pocket of the defendant's jacket, just after

---

**1.** The term "arrest" in military law means directing a person to remain within certain specified limits. Article 9, Uniform Code of Military Justice, 10 U.S.C. § 809. The term "apprehension" means the taking of a person into custody. Article 7, Uniform Code of Military Justice, 10 U.S.C. § 807. Thus, the term "arrest", when used by civilian courts, is virtually synonymous with the term "apprehension" in military legal parlance.

**2.** The only difference between this case and *Lotze* was that in *Lotze* the military police testified that they would have apprehended the accused had he been conscious. Although there is no testimony that either Specialist Murrow or his police partner had such an intention, there was ample objective probable cause to justify apprehending the appellant and we are certain if he had not needed further medical care, he would have been informed that he was apprehended.

his arrest, was decided. The defendant and three companions, who had been in the automobile, were outside the automobile when the arresting officer searched the pocket of the jacket, which was in the back seat of the automobile. The New York Court of Appeals applied the principle set forth in *Chadwick*, quoted above, and held that the search could not be justified as incident to arrest because the arresting officer had exclusive control of the jacket and there was no longer any danger that the defendant or any of his companions might gain access to it. *People v. Belton*, 50 N.Y.2d 447, 429 N.Y.S.2d 574, 407 N.E.2d 420 (1980). The Supreme Court reversed the New York court and held that the search was justified as incident to the defendant's arrest. While the Supreme Court did not retreat from the rule, announced in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), that only the area from which the arrestee might gain possession of destructible evidence or a weapon can lawfully be searched incident to arrest, the Court did, in *Belton*, clearly emphasize the word "might". As to the New York Court of Appeals' reliance on *United States v. Chadwick, supra*, and utilization of the *Chadwick* "exclusive control" principle, the Supreme Court stated that *Chadwick* was not an "incident to arrest" case, and characterized the New York Court's theory that the search of Belton's jacket could not have been incident to his arrest because the police officer had exclusive control of the jacket as a "fallacious theory".

Our analysis of the Supreme Court's opinion in the case of *New York v. Belton* leads us to conclude that the "exclusive control" principle stated in *Chadwick* is to be applied only when there is no possibility that the person apprehended, or a confederate, might gain possession of a weapon or destructible evidence from the area, or personal property, to be searched, *i. e.*, police control is unquestionably exclusive. Otherwise, at least with respect to searches of the person, *see United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and property immediately associated with the person, *see United States v. Thomas*, 10 M.J. 687 (ACMR 1981), searches contemporaneous with a lawful custodial arrest are lawful.

At the time Specialist Murrow searched the pocket of the appellant's jacket the appellant was regaining consciousness and being prepared for evacuation through medical channels. The jacket was, in our view, personal property "immediately associated with the person" of the appellant, *i. e.*, property in which the appellant had an immediate possessory interest. *Cf. United States v. Thomas, supra*. Accordingly, we are satisfied that Specialist Murrow's search of the jacket was justified as incident to the appellant's apprehension, and that the evidence obtained as a result of that search was properly admitted.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge LEWIS, concur.