# UNITED STATES

v.

**Barry EVANS, 262 95 8327, Lance Corporal (E-3), U.S. Marine Corps.**

**NMCM 89 2681.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 9 Nov. 1988.

Decided 30 May 1991.

Richard J. Dove, Esq., Civilian Defense Counsel.

LT Robert E. Wallace, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before ALBERTSON, Senior Judge, and LANDEN and LAWRENCE, JJ.

ALBERTSON, Senior Judge:

Appellant was tried by general court-martial before officer members and convicted, contrary to his pleas, of one specification of conspiracy to possess, manufacture and distribute "crack" cocaine, one specification of violation of a lawful general order by possessing one red-smoke grenade, two specifications of distribution of "crack" cocaine, and one specification of possession and manufacture of "crack" cocaine with the intent to distribute, in violation of Articles 81, 92, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, and 912a, respectively. The court members sentenced appellant to confinement for 20 years, total forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. After a mistrial on sentence occurred, a rehearing on sentence was held. At the rehearing the court members sentenced appellant to confinement for 8 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence adjudged.

On review the appellant assigns four errors:

I. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF A CONSPIRACY TO POSSESS, MANUFACTURE AND DISTRIBUTE "CRACK" COCAINE BEYOND A REASONABLE DOUBT.

II. THE MILITARY JUDGE DENIED THE APPELLANT HIS RIGHT TO COUNSEL WHEN THE MILITARY JUDGE IMPROPERLY DENIED A DEFENSE REQUEST FOR A CONTINUANCE.

III. THE MILITARY JUDGE ERRED IN DENYING A MOTION TO SUPPRESS THE EVIDENCE SEIZED FROM THE APPELLANT'S AUTOMOBILE.

IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

Contrary to appellant's assertion, we do not find that the military judge erred when he denied the defense motion to suppress the cocaine found in appellant's wallet that was seized during the search of the appellant's automobile, an Isuzu Impulse. The facts surrounding the seizure indicate that the Naval Investigative Service (NIS) agent submitted to the commanding general through the chief of staff a request authorization for NIS to search "the residence of a Willie K. Jones located at 1220 North Butler Drive, Midway Park, MCB, Camp Lejeune, NC." The residence was described as "part of a single story duplex, grey [*sic*] in color with white trim bearing the numbers 1220 next to the front and side doors." Significantly, the request authorization did not seek authority to search any automobile, let alone an Isuzu Impulse. Supporting the request authorization was an affidavit describing the facts surrounding a cooperating witness' controlled purchase of two zip-lock bags of "crack" cocaine from a black male while inside the identified residence of 1220 North Butler Drive. The affidavit also described the cooperating witness' activity prior to the purchase:

Then the CW was surveilled as he walked in an eastward direction along North Butler Drive until he contacted an unidentified black male outside of residence #1220 North Butler Drive. The unidentified black male was exiting a small hatched backed vehicle believed to be a Isuzu Impulse. The CW and the unidentified black male were observed entering residence #1220 North Butler Drive at 0021.

Trial testimony of the chief of staff discloses that the chief of staff briefed the commanding general outside the presence of the NIS agent on the request for search authorization. The chief of staff testified that he only gave the commanding general the information contained within the four corners of the affidavit, except to inform the commanding general that NIS believed they had probable cause. Thus, the sole information the commanding general had before him and upon which he based his decision to issue the authorization to search the Isuzu Impulse is within the request authorization and its supporting affidavit. We are not confronted with credibility problems or conflicting facts. Based upon a very succinct set of facts, then, the commanding general signed the search authorization to search not only the residence located at #1220 North Butler Drive but also "a small hatched backed vehicle associated with the residence or its occupants believed to be a gold in color Isuzu Impulse or other subcompact."

The trial defense counsel moved to suppress the fruits of the search ("crack" cocaine—Prosecution Exhibit 22) of appellant's Isuzu Impulse. The military judge denied the motion because he found a nexus between the car and the house and its occupants who were connected with illicit narcotics, narcotics paraphernalia utilized in the manufacture, sale, and distribution of cocaine, or records pertaining to any illicit narcotic transactions, including telephone and financial records based upon the affidavit supporting the request authorization. The military judge did not cite the law upon which he based his ruling, *see*

*United States v. Postle,* 20 M.J. 632 (N.M. C.M.R.1985); but the judge is presumed to know the law. The defense asserts that the military judge found probable cause on the totality-of-the-circumstances test as established in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), as applied by the United States Court of Military Appeals in *United States v. Tipton,* 16 M.J. 283 (C.M.A.1983).

We must determine whether a reasonable person in the position of the commanding general could conclude from the information given him that probable cause existed to believe that illicit narcotics (cocaine), narcotics paraphernalia utilized in manufacturing, sale, and delivery of cocaine, or records pertaining to any illicit narcotics transactions, including, but not limited to telephone and financial records, were currently located in the Isuzu Impulse to be searched. The appellant asserts that such a reasonable person would find it difficult to reach such a conclusion based upon the reading of the affidavit. Since there is no dispute as to the information received by the commanding general, the issue for this Court is one of law and not of fact. *United States v. Johnson,* 23 M.J. 209 (C.M.A. 1987).

Military Rule of Evidence (Mil.R. Evid.) 315(f)(2) provides that a search authorization must be based upon probable cause which in turn is based on oral statements presented to the authorizing officer in person or on written statements. Evidence that is obtained as a result of an unlawful search or seizure may be used if the search or seizure was the result of a search authorization issued by a person who had a "substantial basis for determining the existence of probable cause," and the officials seeking and executing that search authorization "reasonably and with good faith relied on the issuance of the authorization...." Mil.R.Evid. 311(b)(3). Additionally, the individual authorizing the search must be neutral and detached and not an adjunct of law enforcement. *United States v. Stuckey,* 10 M.J. 347 (C.M.A.

1981).[1]

█ It is well-settled that more than mere suspicion is required to establish probable cause. *United States v. Clifford,* 19 U.S.C.M.A. 391, 41 C.M.R. 391 (1970). Fruits of a search based upon mere suspicion are also inadmissible. *Id.; United States v. Penman,* 16 U.S.C.M.A. 67, 36 C.M.R. 223 (1966). "Possibility does not equate to probability." *United States v. Shepherd,* 24 M.J. 596 (A.F.C.M.R.1987), *pet. denied,* 25 M.J. 238 (C.M.A.1987). That probable cause exists to authorize a search of one specific place does not automatically provide probable cause to believe that similar evidence is located in other places. *See United States v. Moore,* 23 M.J. 295 (C.M.A.1987); *United States v. Lidle,* 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972).

█ In reviewing the probable cause determination made by the commanding general, we do not consider the issue *de novo, Illinois v. Gates,* but we do determine whether the commanding general had a substantial basis for concluding that probable cause existed. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960); *Penman; United States v. Postle,* 20 M.J. 632 (N.M.C.M.R. 1985). We do that by looking at the information the commanding general had before him at the time he authorized the search. *United States v. Clifford, supra; see*

*Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 1035 n. 8, 28 L.Ed.2d 306, 311 n. 8 (1971); *United States v. Cobb,* 432 F.2d 716 (4th Cir.1970), including the consideration of any hearsay he had before him as long as a substantial basis was presented for crediting the hearsay. *Penman.*

█ Within that traditional realm for testing, we find the information was adequate to establish the required probable cause because a reasonable person in his position as commanding general could conclude that the information presented within the four corners of the affidavit, as orally presented by the chief of staff, connected the automobile with illicit narcotics, narcotics paraphernalia utilized in the manufacture, sale, and distribution of cocaine, or records pertaining to any illicit narcotic transactions, including telephone and financial records. *See Clifford,* 19 U.S.C.M.A. 391, 41 C.M.R. 391. We recognize the authorization to search request described the automobile to be searched in very vague terms: "a small hatched backed vehicle associated with the residence or its occupants believed to be a gold in color Isuzu Impulse or other subcompact." We recognize that the only facts contained in the affidavit supporting the request that were relevant to the involvement of a car was that an unidentified black male exited a small hatch-back vehicle, believed to be an

---

1. We note here that we do not address the issue of whether the commanding general properly exercised his discretion in a neutral and detached manner because under the factual circumstances of this case, the issue is not ripe. *Cf. United States v. Postle,* 20 M.J. 632, 644 (N.M.C.M.R.1985). We acknowledge the issue only to express our concern with the statements made by the chief of staff during the suppression motion when he stated with regard to considering information provided possibly by unreliable persons:

... we have to do whatever's in the best interest of command. And when we're talking about criminal activity and in particular, drug activity, at that point I have to say that my judgment is that I'm going to err in the direction of doing the search as opposed to saying, "Well, this man has been proven before to be unreliable." We have a number of witnesses in the NIS cooperative witness program whose validity is questionable.... So

I'm not sure my judgment would have changed if I had known that this guy was perhaps a suspect on his credibility. R. 43–44. The chief of staff succinctly identified the balancing dilemma that confronts a commanding general who, as a commander, must be concerned with stemming criminal activity that threatens the morale and discipline of his command and thus the command's effectiveness. At the same time he is required to act as a neutral and detached individual who must balance the command's interests in stemming that criminal activity with the individual's right to have his property protected against an unreasonable search. The admissibility of any evidence seized as a result of his probable cause determination turns on the reasonableness of his decision which in turn is dependent upon the intricacies of the military justice system that is the tool he uses to stem the criminal activity within his command. *See United States v. Morris,* 28 M.J. 8 (C.M.A.1989).

Isuzu Impulse, parked in front of 1220 North Butler Drive, and that unidentified individual walked with the cooperating witness into the residence. The unidentified black male was never specifically identified as having anything to do with any of the drug-related activities the cooperating witness observed going on in the residence. The mere fact that a person parks a car in front of a house from which "crack" is known to be distributed, without something more, cannot justify a search of the automobile. *See Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *United States v. Hatcher,* 473 F.2d 321 (6th Cir.1973); *see also United States v. Savoca,* 739 F.2d 220 (6th Cir.1984), *rev'd on other grounds* 761 F.2d 292 (6th Cir. 1985); *United States v. Troy,* 22 U.S.C. M.A. 195, 46 C.M.R. 195 (1973). The commanding general need not, however, evaluate the information before him in a vacuum. He may take that information, evaluate it in the light of his own common sense and experience, and draw all logical inferences therefrom.

■ In spite of the foregoing lack of particularity in the affidavit, we find that the information before the commanding general reasonably supports a finding that the house at 1220 Butler Drive was a place where drug dealing was taking place. Whether the unidentified black male was the primary lawful occupant of the house or whether he was a visitor, he was either a dealer or an accomplice in illegal drug activity. Obviously, cocoa plants growing in the house were not producing the basic substance from which "crack" cocaine could be manufactured; that substance was brought to the house by someone undoubtedly in an automobile. If the unidentified black male was the primary lawful occupant, the car he was driving was a means of transporting contraband even if it was no more than drug paraphernalia. If the unidentified black male was a co-occupant of the house, a strong inference could reasonably be made that he was an accomplice since innocent persons do not voluntarily reside in houses where illegal drug activity is conducted. If the unidentified black male was a visitor, he was aware that illegal drug activity was taking place because the affidavit suggests that crack was being cut on the top of a table and the deal went down just after the unidentified black male entered the house with the cooperating witness. A logical inference is that he saw the deal or knew it took place. A non-involved citizen does not remain in or around a place where drug deals are openly taking place. Ergo, if he is a visitor he has something to do with the illegal drug activity. From any one of these scenarios, the commanding general could reasonably conclude that the unidentified black male was a transporter of drugs or paraphernalia to and from the house even if he is only a casual user. By any of these inferences, the commanding general could reasonably conclude that drugs or paraphernalia or evidence of the same will be in the car he was driving and parked in front of the house just prior to his walking into the house with the cooperating witness who bought cocaine either from or in the presence of this unidentified black male. Based upon an application of the totality of the circumstances test, we find that the commanding general could reasonably conclude that he had a substantial basis to find probable cause existed to authorize the search of the appellant's car. Therefore, the military judge did not err when he failed to suppress the cocaine found during the search of appellant's car.

■ Assuming *arguendo* that the commanding general did not conclude that probable cause existed to search the car, or that his conclusion was erroneous, two grounds nonetheless exist that warrant admission of the evidence: inevitable discovery and good faith. Regarding the first ground, it is apparent that the search of the house was based on probable cause and was proper. Since it was apparent that drug trafficking was taking place openly in the house, and it is well-known that drug dealers are often armed, all occupants of the house would be apprehended, searched for weapons and contraband, and taken into custody. It is probable that the car would then have been impounded, even if

only temporarily, inventoried, and the cocaine discovered.

 Regarding the second ground, the cocaine was admissible upon application of the good faith exception adopted by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Supreme Court held that evidence seized by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate without sufficient facts to support probable cause need not be excluded. The *Leon* good faith exception was adopted by this Court in *United States v. Postle*, 20 M.J. 632, 643 (N.M.C.M.R.1985).

At the time the commanding general made his probable cause decision, the NIS agent was immediately available to answer any questions the commanding general might have about the house or the car. Based upon the information the NIS agent knew the commanding general had and the additional information the NIS agent knew he himself had, the NIS agent could reasonably have concluded that the information contained in the affidavit was sufficient for the commanding general to find probable cause to search the car without the additional information known to the NIS agent. Had it been otherwise, the commanding general would have come to the NIS agent for additional information. It was therefore not unreasonable for the NIS agent to conclude that the commanding general's authorization to search the house and car was based on probable cause.

We are convinced beyond a reasonable doubt of the appellant's guilt of the offenses of which he was convicted. Accordingly, the findings and sentence approved on review below are affirmed.

Judge LANDEN and Judge LAWRENCE concur.