UNITED STATES, Appellee,

v.

Barry EVANS, Lance Corporal, U.S. Marine Corps, Appellant.

No. 67,209.

NMCM 89 2681.

U.S. Court of Military Appeals.

Argued June 4, 1992.

Decided Sept. 24, 1992.

For Appellant: *Captain Guy R. Abbate,* JAGC, USN (argued); *Lieutenant Peter Van Hartesveldt,* JAGC, USNR (on brief); *Lieutenant Karen M. Miller,* JAGC, USNR.

For Appellee: *Major Laura L. Scudder,* USMC (argued); *Colonel T. G. Hess,* USMC (on brief).

*Opinion of the Court*

WISS, Judge:

A general court-martial with members convicted appellant, despite his pleas, of conspiracy to possess, manufacture, and distribute crack cocaine; violation of a lawful general order by possessing explosives; wrongful distribution of crack (two specifications); and wrongful possession and manufacture of crack with intent to distribute. *See* Arts. 81, 92, and 112a, Uniform Code of Military Justice, 10 USC §§ 881, 892, and 912a, respectively. The members sentenced appellant to a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to the lowest enlisted grade.

After a motion for mistrial as to sentence had been granted, the new members sentenced appellant to a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed. 32 MJ 1016 (1991).

On appellant's petition, we granted review to determine whether the military judge erred by denying Evans' motion to suppress cocaine found in and taken from his automobile. We hold that the judge did not err.

## I

After a "cooperating witness" (CW) had made a "controlled purchase of two zip-lock bags of 'crack' cocaine from a black male while inside the identified residence ...," an agent of the Naval Investigative Service (NIS) requested a search authorization from the commanding general, through the general's chief of staff. The request was for "authorization ... to search 'the residence of a Willie K. Jones located at [address], Midway Park, MCB, Camp Lejeune NC.'" *Id.* at 1018.

Supporting the request, the agent submitted an affidavit that described the particulars of the earlier "controlled purchase" inside the house, including the events immediately leading up to that purchase. In part pertinent to this appeal, the affidavit indicated:

> Then the CW was surveilled as he walked in an eastward direction along North Butler Drive until he contacted an unidentified black male outside the residence of ... North Butler Drive. The unidentified black male was exiting a small hatched backed vehicle believed to be an Isuzu Impulse. The CW and the unidentified black male were observed entering residence at ... North Butler Drive at 0021.

*Id.* at 1019. As the Court of Military Review recognized, "The unidentified black male [who had exited the automobile and had accompanied the CW into the residence] was never specifically identified as having anything to do with any of the drug-related activities the cooperating witness observed going on in the residence." *Id.* at 1021.

With the NIS agent waiting outside, the chief of staff gave the general the authorization request and the supporting affidavit, along with his own recommendation. No additional information was available to the general. Based upon these facts, the general signed a search authorization that included not only the requested search target—the residence at North Butler Drive— "but also 'a small hatched backed vehicle associated with the residence or its occu-

pants believed to be a gold in color Isuzu Impulse or other subcompact.'" *Id.* at 1019.

Subsequently, NIS agents went to the residence, entered it, and searched the house while appellant, Jones, and a third person named Carrie Trapp were seated in the living room. Evidence of crack manufacture and distribution were found. Then, the agents moved to search the Isuzu Impulse parked outside. In the car, they found appellant's wallet and, in it, discovered cocaine.

In a timely motion to suppress, appellant sought to exclude from his court-martial evidence of the cocaine found in his wallet in the car. After litigating the motion, the military judge denied it, finding a "nexus" between the car and the house and its occupants who were engaged in illicit drug activity therein.

On appeal, the Court of Military Review upheld the ruling, giving three grounds: The commanding general had probable cause from the information presented to him that the automobile was "connected" with illicit narcotics, *id.* at 1020; even if there was no probable cause, the evidence would have inevitably been discovered pursuant to a "probable" impoundment and inventory of the car incident to the search of the residence and the apprehension of those present, *id.* at 1021–22; and, in any event, the NIS agents acted in reasonable, good-faith reliance on the search authorization that included the automobile, *id.* at 1022.

## II

■ Responding to appellant's challenge to that decision in this Court, the Government urges a number of commonly recited bases of support for it, including the commander's probable cause, the automobile exception to the warrant/authorization requirement, inevitable discovery, and the good-faith exception. Because we believe that the automobile exception to the authorization requirement controls this appeal,

**308**

*infra,* we need not address the remainder of the Government's arguments.

The hallmark case of the Supreme Court of the United States setting forth the so-called "automobile exception" to the Fourth Amendment's warrant requirement is *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). After an intensive review of the Fourth Amendment's historical evolution, the Court there observed that

> the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

> Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made.... [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise....

> *  *  *

> The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.

*Id.* at 153–56, 45 S.Ct. at 285–86.

■ The predicate step, then, for invoking the automobile exception to the warrant requirement is that the searching officers must have had probable cause to search the vehicle. "Under the vehicle exception to the warrant requirement, '[o]nly the prior approval of the magistrate is waived; the search otherwise [must be such] as the magistrate could authorize.' [*United States v.*] *Ross,* [456 U.S. 798] at 823 [102 S.Ct. 2157, at 2172, 72 L.Ed.2d 572 (1982)]." *California v. Carney,* 471 U.S. 386, 394, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985).

Whether the commanding general here had probable cause to believe contraband would be found in the named car, the NIS agents had a substantial basis for such a belief after they had searched the house pursuant to the authorization (the lawfulness of which is not challenged here). During that search, the agents had found, in Jones' bedroom: a beeper; $319.99 in cash in a Gucci bag, including four $20–bills with serial numbers matching money that the cooperating witness had used during the controlled purchase; a plastic bag of cocaine; and a vial of cocaine. In appellant's bedroom, agents had found: a plastic bag of crack cocaine; 2 strainers containing traces of cocaine; several small, green, plastic, ziplock bags (commonly used in the crack business); several more such bags in a sweatsuit; and a beeper. Finally, in the common kitchen area, agents had found: a plate containing $3000–$3500 worth of crack cocaine, still soft and cooling in the refrigerator; a pyrex measuring cup and a saucepan with marks in it that corresponded to the cup when used as a double-boiler, such as when used in the crack manufacturing process; and 2 boxes of baking soda in the refrigerator, material that is used in the crack manufacturing process.

In light of this abundant evidence in the house of crack manufacturing and distribution by both Jones and appellant, the NIS agents had probable cause to believe that additional evidence (*see Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)) would be found in the automobile that, shortly before, they had seen someone—who proved to be Jones—drive up to the residence. The search of the automobile was plainly one that a magis-

trate or a commander could authorize if presented with these facts.

Once probable cause exists to search an automobile, the rationale for excusing the usual need for a warrant or authorization is that the automobile "is obviously readily mobile by the turn of an ignition key" and that "there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling." *California v. Carney*, 471 U.S. at 393, 105 S.Ct. at 2070. *See* 3 W. LaFave, *Search & Seizure* § 7.2 at 22 (2d ed. 1987). *See also United States v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977) (greater expectation of privacy in luggage and personal effects than in automobile).

It is not particularly relevant that appellant was arrested in the house, not in his parked car, and ultimately was taken away in custody. The agents had no way to know who else had a key to the car. They surely were not required, in order for their actions to be reasonable under the Fourth Amendment, to leave the car parked and unattended, pending their return sometime in the future with a search authorization, and risk finding the car missing on their return. As to any suggestion that the officers could have posted a guard at the car to ensure its presence at some later, indefinite time when fellow officers could return with a warrant, that, itself, would be a warrantless seizure of the car, denying "its use to anyone until a warrant is secured." *See Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

As we noted earlier, it is not entirely clear that probable cause had materialized until after the agents were on the scene and the house had been searched. As the Supreme Court noted in *Chambers v. Maroney, supra* at 50–51, 90 S.Ct. at 1980–81:

> [T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in *Car-*

*roll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.

(Footnote omitted.) As the Court logically concluded, where these exigent circumstances present themselves to law enforcement officers, "there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." *Id.* at 52, 90 S.Ct. at 1981 (footnote omitted). Under these exigent circumstances, the Fourth Amendment does not distinguish between these choices. *Id.* at 51–52, 90 S.Ct. at 1981–82. *See United States v. Schmitt*, 33 MJ 24 (CMA 1991). *See generally United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (agents with probable cause to search trucks seized them, took them back to headquarters, and searched them—including packages therein—all without a warrant: Upheld.).

■ Once probable cause arose to search appellant's car, of course, the probable cause "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. at 825, 102 S.Ct. at 2173. Indeed, the Supreme Court has now made it clear that—whether there is probable cause to search a vehicle and a container therein is found and opened, or whether there is probable cause to search a container and the container is found in a vehicle— the automobile exception to the need to obtain a warrant for the search satisfies the Fourth Amendment's reasonableness requirement. *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). As the Court cogently put it—with somewhat startling finality of breadth:

> We therefore interpret *Carroll* as providing one rule to govern all automobile searches. The police may search an automobile and the containers within it

where they have probable cause to believe contraband or evidence is contained. *Id.* at ——, 111 S.Ct. at 1991. Accordingly, we hold that the search of appellant's wallet that was discovered during the search of the car pursuant to probable cause and the seizure of the crack cocaine found in the wallet were reasonable.

### III

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and GIERKE concur.

CRAWFORD, Judge (concurring in the result):

I write separately because the exigent circumstances requirement of *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), has been overtaken by more recent cases.

The Supreme Court stated in *United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977), quoting *Cady v. Dombrowski*, 413 U.S. 433, 441–42, 93 S.Ct. 2523, 2528–29, 37 L.Ed.2d 706 (1973), that warrantless vehicle searches were permitted even "in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent." The basis for this language is the lesser expectation of privacy in a vehicle and its mobility. Other cases

have taken the same track. In *Colorado v. Bannister*, 449 U.S. 1, 3 n.2, 101 S.Ct. 42, 43 n. 2, 66 L.Ed.2d 1 (1980), a unanimous Court concluded that where probable cause to search the vehicle developed after a traffic stop, "it would be especially unreasonable to require a detour to a magistrate before the unanticipated evidence could be lawfully seized." Likewise in *Texas v. White*, 423 U.S. 67, 70, 96 S.Ct. 304, 306, 46 L.Ed.2d 209 (1975) (Marshall, J., dissenting), the Court held that a vehicle search at a later time was permitted even though, as pointed out by the dissent, "there [was] no indication that an immediate search would have been either impractical or unsafe for the arresting officers." *See also United States v. Schmitt*, 33 MJ 24, 25 n.* (CMA 1991).

Following the lead of the Supreme Court, the lower Federal courts have indicated "that the inherent mobility of automobiles by itself provides the only exigent circumstances needed." *United States v. Reis*, 906 F.2d 284, 291 (7th Cir.1990) and cases cited therein. *See also United States v. Crabb*, 952 F.2d 1245, 1246 (10th Cir.1991) ("Given probable cause to believe that a vehicle contains contraband, does the Constitution require law enforcement agents to obtain a warrant before searching the vehicle? Opinions from the Supreme Court and this circuit suggest not."). Mil.R.Evid. 315(g)(3);* 3 W. LaFave, *Search and Seizure* § 7.2 at 6 n.65 (2d ed. Pocket Part 1992) and cases cited therein.

---

\* Mil.R.Evid. 315(g), Manual for Courts–Martial, United States, 1984, provides:

> *Exigencies.* A search warrant or search authorization is not required under this rule for search based on probable cause when:
>
> \*    \*    \*
>
> (3) *Search of operable vehicle.* An operable vehicle is to be searched, except in the cir-

cumstances where a search warrant or authorization is required by the Constitution of the United States, this Manual, or these rules; ...

\*    \*    \*

For purposes of this rule, a vehicle is "operable" unless a reasonable person would have known at the time of search that the vehicle was not functional for purposes of transportation.