UNITED STATES

v.

**Lynnford W. CLAYPOOLE, Seaman Apprentice, U.S. Coast Guard.**

**CGCMG 0104.
Docket No. 1058.**

U.S. Coast Guard Court of
Criminal Appeals.

4 June 1997.

Trial Counsel: LCDR Jeffrey C. Good, USCG.

Individual Military Counsel: LT Monica L. Lombardi, USCGR.

Assistant Defense Counsel: LT Andrew Norris, USCG.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Defense Counsel: LT Richard R. Beyer, USCGR.

Appellate Government Counsel: LT Frank R. Levi, USCGR.

Before BAUM, O'HARA, and WESTON, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by general court-martial, judge alone. Pursuant to guilty pleas, entered in accordance with a pretrial agreement, he was convicted of the following offenses: one specification of fraudulent enlistment; one specification of desertion for almost seven years; one specification of wrongful use of marijuana; one specification of violating 42 U.S.C. 408(a)(6) by furnishing

a false name to the Secretary of Health & Human Services; and one specification of violating 18 U.S.C. 922(g) by receiving a firearm as a convicted felon, in violation of Articles 83, 85, 112a, and 134, Uniform Code of Military Justice (UCMJ). The military judge sentenced appellant to a dishonorable discharge, confinement for fifteen months, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the sentence, but suspended execution of confinement in excess of ten months for eighteen months from the date of trial, which was within the terms of the pretrial agreement.

Before this Court, appellant has assigned two errors, that the Court lacks jurisdiction because of a defective civilian judicial appointment and that the military judge erred by failing to suppress evidence unlawfully seized from appellant's car and home. The first assignment has been resolved against appellant by the U.S. Supreme Court, *Edmond v. United States,* —— U.S. ——, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997), and is rejected for that reason. The second assignment will be addressed.

### Admission of Evidence Found As a Result of a Search of Appellant's Automobile

At trial, appellant unsuccessfully moved to suppress evidence resulting from a search of his car. Thereafter, he entered conditional pleas of guilty to two offenses dependent on that evidence—the false social security card and firearm possession offenses—allowing him to raise the evidence issue before this Court. He has done so by asserting that the judge ruled erroneously when she denied the suppression motion, finding a probable cause search of an operable vehicle, not requiring a warrant. The facts that ultimately led to the search of appellant's car are as follows.

After separation from the U.S. Marine Corps as an E–2 with an other than honorable discharge in 1984 and a subsequent felony conviction in Florida, appellant enlisted in the U.S. Coast Guard in 1988 under the false name of William Allen Kidd, using identification that included a false social security card, a false Florida driver's license, and a false birth certificate. Graduating from Coast Guard recruit training, but before being sent to a new duty station, appellant absented himself from the U.S. Coast Guard Training Center, Cape May, N.J., remaining absent until apprehended on 11 May 1995. During that absence, appellant assumed the new name of William Harold Bonney, moved to Arizona, and obtained various forms of identification with this new name.

A criminal case on appellant was opened in 1988 and closed in 1989. Then, in 1995, a Fifth Coast Guard District criminal investigator, Special Agent Andrew W. Dunphy, was assigned to investigate appellant's case and, in the process of reviewing correspondence that appellant had left behind, found an unmailed letter appellant had signed "Billy the Kidd." Having already tried, without success, to locate appellant using his real name, Lynford W. Claypoole, Special Agent Dunphy applied some fine detective work with another search using the real name for "Billy the Kidd"—William H. Bonney—which Dunphy found in an encyclopedia. Knowing that at one point, after deserting, appellant had been in New York, Dunphy checked that state's driver's license records and found a record of an application for a New York driver's license submitted after the absence commenced by a William H. Bonney with appellant's birth date. Pursuing that lead, Dunphy found that the address given on the license application was that of appellant's sister. Believing this was his man, Dunphy then ran a criminal history check through the National Crime Information Center (NCIC) and found a 1990 arrest of a William H. Bonney in Phoenix, Arizona. Further search in that state produced an Arizona driver's license with a photograph, which Dunphy compared with the Coast Guard's photo of Kidd and a Florida arrest photo of Claypoole. Concluding that Lynnford Claypoole, William Kidd, and William Bonney were definitely the same person, Dunphy went to Arizona to track him down.

In Arizona, Dunphy was able to determine Bonney's place of employment and the type of vehicle he was driving, among other things. He also found where Bonney bought the car, a white Camaro, and, in talking to a salesman there, was told that about two

months earlier Bonney had come in driving a blue pickup truck and had offered to sell a .22 caliber rifle and a semiautomatic handgun, which the salesman saw in the back of the pickup. Also, Dunphy, after locating Bonney's residence, drove by and saw a blue pickup parked in the driveway. Dunphy also knew that Claypoole had a prior arrest for carrying a concealed weapon. All of this information caused him to have a heightened concern for the safety of those who would be apprehending Bonney.

After talking to management at the hazardous materials cleanup site where Bonney worked and, finding what time he arrived and what he would be driving, it was decided to apprehend him there in the parking lot. The cleanup site was located on Williams Air Force Base in Mesa, Arizona, which was in the process of being turned over to the City of Mesa. Although the entrance was manned by Mesa Police Department Officers who checked identification at the gate, the Base still belonged to the Air Force, assuring Dunphy that there was military jurisdiction. He and four other agents stationed themselves to effect the apprehension at approximately 0600, 11 May 1995. Dunphy was to make the call as to whether they had the right person; two agents who would apprehend Bonney were in a parked vehicle in the lot and another agent was to follow Bonney's car from about 100 yards before he got to the site. The fifth agent, in another parked vehicle, was to come in behind appellant after he got out of his car to keep him from getting back to the vehicle.

Everything went according to plan. The white Camaro was spotted coming up the road and pulling into the lot. Once parked, appellant exited the car and started walking away, at which time Dunphy made the call that he was to be taken when he got far enough from his car that the agent blocking him from going back could be in place. When appellant was approximately 30 feet from his vehicle, the two apprehending agents took him to the ground, handcuffed him, and brought him over to a nearby parked truck where he was searched. The search produced car keys but no forms of identification. Dunphy took the keys and

immediately went to the locked car, opened it, and searched the entire passenger compartment for weapons and identification, believing it was a search incident to arrest for which he had authority. He found a wallet which contained an Arizona driver's license, a social security card, and various other forms of identification, all for William H. Bonney. Dunphy also found a sales receipt for a 10 millimeter handgun which had been paid for partly in cash and partly with a trade in of a 22 caliber weapon. No weapons were found in the car, however, but armed with the sales receipt, Dunphy went to appellant's home and appellant's wife gave him permission to seize weapons that were in a safe.

■ Based on these facts, appellant contended at trial that the search of his car was not a proper search incident to arrest pursuant to Military Rule of Evidence (MRE) 314(g) because he was no longer an occupant of the vehicle and it was no longer under his control when the search was conducted. He argued that the items from his car should have been suppressed because of this illegal search and seizure and that the weapons from his home should have been suppressed as fruits of the poisonous tree. Before this Court, appellant has made the same arguments. However, at this point we have the military judge's ruling and findings of fact, in which she denied the suppression motion on another basis and specifically said that she was not going to draw any conclusions concerning the search incident to arrest argument, because she believed that the law on that subject was uncertain and that she did not need to make a decision on that basis. Instead, she found that the search of appellant's car was a probable cause search of an operable vehicle, which did not require a warrant.

■ Indeed, MRE 315(g)(3) specifically authorizes search of an operable vehicle without a warrant when based on probable cause. Appellant, however, argues that this Rule was not satisfied because the car was not operable and there was no probable cause. He contends that his car was not operable because the keys needed to operate it had been seized, that there is no evidence suggesting another set of keys existed, and that

the agents could have secured the car while they sought a search warrant or authorization. The Government responds that this argument runs counter to the holding in *U.S. v. Evans*, 35 M.J. 306 (CMA 1992), and offers the following quote from that case as controlling:

It is not particularly relevant that appellant was arrested in the house, not in his parked car, and ultimately was taken away in custody. The agents had no way to know who else had a key to the car. They surely were not required, in order for their actions to be reasonable under the Fourth Amendment, to leave the car parked and unattended, pending their return sometime in the future with a search authorization, and risk finding the car missing on their return. As to any suggestion that the officers could have posted a guard at the car to ensure its presence at some later, indefinite time when fellow officers could return with a warrant, that, itself, would be a warrantless seizure of the car, denying "its use to anyone until a warrant is secured." *See Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

*Id.* at 308.

█ We agree with the Government. *Evans* is determinative on the question of whether the car was subject to a search without a warrant. Notwithstanding the operable status of the car, however, appellant contends that the second requirement, that of probable cause, was missing, because the agents already knew that they had the man they were looking for based on photographs and a distinctive tattoo. Since they also knew he was living and working as William H. Bonney, appellant asserts there was no need to search his car. Appellant's argument here misses the point. Even if the agents believed they had the right man for the reasons given, they still needed further evidence, such as a driver's license or a social security card, to conclusively establish that he was, in fact, William H. Bonney and that Bonney, Lynnford W. Claypoole, and the deserter William A. Kidd, were one and the same man.

The military judge found that identification in the name of Bonney would be evidence of desertion, and that the agents had probable cause to believe that it was in the car. R. 94. That the identification was likely to be in the car is well established by the fact that a driver's license was needed to operate a vehicle and that the agents had observed appellant driving the car. Furthermore, the agents knew that identification was also needed to enter the base, that appellant had just driven through the gate, and that he had no identification on his person. It was, therefore, reasonable to conclude that the necessary identification was in the car that he had just exited. MRE 315(f)(2) says "Probable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." The judge was correct in finding probable cause to search for identification bearing the alias, William H. Bonney. That the agents may already have had sufficient evidence before finding the identification is simply not germane to whether the government may pursue additional evidence.

█ In her findings of fact, the military judge also found that information concerning appellant's possession of two weapons in his pickup truck two months earlier provided good reason to take safety precautions in apprehending him, but that this information did not rise to the level of probable cause to suspect there was a weapon in his vehicle when apprehended. The Government contends otherwise, citing not only the evidence pertaining to appellant's attempted sale of weapons from his truck two months earlier, but also his known prior arrest for carrying a concealed weapon. Having found probable cause to search for identification, there is no need to determine whether the finding as to weapons was correct or not, because, as the Government points out, citing *U.S. v. Evans*, supra; *U.S. v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982); and *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), "once probable cause is established, the 'search of every part of the vehicle and its contents that may conceal the object of the search' is proper." AGC brief, 5. Accordingly the search and

seizure of the weapon's sales receipt in the car was proper as was the ultimate seizure of the weapon at appellant's home. Appellant's assignment of error is without merit.

### Disposition

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact, and on the basis of the entire record should be approved. Accordingly, the findings of guilty and sentence, as approved and partially suspended below, are affirmed.

Judges O'HARA and WESTON concur.